[L. A. No. 2965. Department Two.—March 3, 1913.]

BESSIE CURRIER WURZBURGER, and WILLIAM W. WURZBURGER, her . Husband, Appellants, v. C. J. NELLIS et al., Respondents.

NEW TRIAL—ORDER GRANTING—REASONS FOR ORDER—AFFIRMANCE ON APPEAL.—An order granting a new trial, which was moved for on various assigned grounds, must be sustained on appeal, irrespective of the reasons given by the trial court for its action, if it could have been granted with propriety upon any of the grounds assigned.

ID.—ROAD COMMISSIONER OF RURAL DISTRICT—FAILURE TO KEEP SIDEWALK IN REPAIR—NEGLIGENCE—LARGE EXTENT OF DISTRICT—ABSENCE OF NOTICE OF DEFECT.—In an action against a road commissioner of a rural district to recover damages for personal injuries received by a person while walking at night along the sidewalk of a public road, which were alleged to have been caused through the negligence of the defendant in failing to keep such sidewalk in a condition of good repair, it is held that the trial court did not abuse its discretion in granting the defendant's motion for a new trial, where it appeared that the district under the supervision of the defendant was territorially very large, and that there were about seventy-five miles of worked roads therein, and the evidence

was conflicting as to whether the defendant had any notice of the existence of the particular defect in the sidewalk which caused the injury.

ID.—LIABILITY OF COMMISSIONER—REASONABLE CARE REQUIRED—QUESTION FOR JURY.—A street commissioner or road overseer can be held to the exercise of only a reasonable degree of care, and the question what constitutes a reasonable degree of care is primarily one for the jury, but is also one which the trial court may consider in passing upon a new trial.

ID.—DIFFERENCE BETWEEN LIABILITY IN RURAL DISTRICTS AND MUNICIPALITIES.—The degree of care exacted from a road commissioner in a rural district is quite different from that imposed upon a street superintendent in a city, and the requirements respecting notice to persons charged with the repairing of rural roads are different from those governing the same subject matter in relation to urban officers.

ID.—DUTIES OF ROAD COMMISSIONER—EXECUTION SUA SPONTE—REPORTING DEFECTS TO SUPERVISORS.—Notwithstanding, under the provisions of the Political Code, the functions of a road commissioner are to be performed under the direction of the board of supervisors, still he has certain positive duties to be executed of his own motion, one of which is to keep the roads clear from obstructions and in good repair. He has at least the duty of reporting to the board cases requiring attention, and is culpable if he fails to do all that he may reasonably be expected to do toward providing for the repairs of the dangerous places in the roads of his district.

ID.—SIDEWALK ALONG PORTION OF ROAD—BELIEF IN CONTINUANCE.—The mere fact that a sidewalk existed along a portion of a highway in a rural district did not justify a pedestrian in the belief that it existed throughout the entire length of the road.

APPEAL from an order of the Superior Court of Los Angeles County granting a new trial. Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

Moore & Finkenstein, for Appellants.

Hartley Shaw, J. D. Fredericks, District Attorney, D. M. Hunsaker, and Hunsaker & Britt, for Respondent.

MELVIN, J.—Plaintiff, Bessie Currier Wurzburger, was injured by a fall into a gully or wash which traversed a portion of a public road in Los Angeles County. The accident

CLXV Cal.—4

occurred in the evening after 8 o'clock while Mrs. Wurzburger was proceeding along the road. Mrs. Wurzburger testified that she walked along the sidewalk to a point where it ended abruptly. She stepped down a few inches to the ground, and, thinking that she was traversing a cross street, proceeded three or four steps, when her foot struck the edge of one of the boards by which, as she expressed it, "the wash was banked up," and thereupon she plunged headlong into the gully. As a result there were fractures of the femur and the coccyx, lacerations of the shoulder, and scars and bruises upon her face. She suffered great pain; was confined to her bed for several months; and because of the fracture to the femur one leg is shorter than the other by more than half an inch. The court instructed the jury to render a verdict in favor of all of the defendants except R. W. Pridham, who was the member of the board of supervisors having charge of the roads in the district in which the accident occurred. A verdict against him for eleven thousand five hundred dollars was returned by the jury, and judgment was entered accordingly; but upon motion a new trial was granted. This appeal is by the plaintiffs prosecuted from the order granting said motion.

The grounds of the motion were: 1. Insufficiency of the evidence to justify the verdict; 2. That the verdict was against law; 3. That material errors of law, to which respondent excepted, occurred at the trial; and, 4. That the damages were excessive, appearing to have been given under the influence of passion and prejudice. There were many specifications of alleged insufficiency of evidence to support the verdict. The order granting the motion was in general terms. Counsel for the plaintiffs concede that if the order is capable of rational support upon any of the grounds mentioned in the motion, it should stand, but they contend that all of the alleged reasons for granting the motion were without merit. In their brief, counsel say the court informed them that the motion for a new trial was granted because of errors of law in admitting and rejecting testimony. This, however, does not appear from the record and even if the court had by a written opinion given reasons for the action taken in making the order for a new trial, we would be compelled to sustain the order if it could have been granted with propriety upon any of the

grounds assigned. (*Morgan* v. *Robinson Co.,* 157 Cal. 351, [107 Pac. 695].)

There was a conflict of testimony upon the matter of notice to defendant Pridham. The duties of a road commissioner are defined by section 2645 of the Political Code, which is in part as follows: "Road commissioners, under the direction and supervision and pursuant to orders of the board of supervisors, must:

"1. Take charge of the highways within their respective districts, . . .

"2. Keep them clear from obstructions, and in good repair. ' . .

"3. Cause banks to be graded, bridges and causeways to be made when necessary, keep the same in good repair, and renew them when destroyed."

Appellants insist that there was no substantial conflict because of the length of time in which the yawning waterway had existed. Brand Boulevard, which is the road involved here, was accepted by the board of supervisors on November 22, 1909. Mrs. Wurzburger was injured about half a year later, on May 27, 1910. Mr. Pridham testified that at no time prior to the accident had he any knowledge or information regarding the unsafe condition of the sidewalk in question. He also testified that the Tropico road district in which Brand Boulevard lay was territorially very large, and that there were about seventy-five miles of worked roads in said district. On his behalf counsel here maintain that he is not in the same position as a street superintendent in an incorporated city, and that therefore proof of the notice to him, either actual or imputed, of the condition of the street, ought to be very clear. *Doeg* v. *Cook,* 126 Cal. 215, [77 Am. St. Rep. 171, 58 Pac. 707], is cited by appellants in support of the doctrine that the existence of the imperfection in the road and the duty of the public officer to keep the highway in repair being shown, his responsibility for any injury caused by a fall of a pedestrian into the cavity in question, follows as matter of course. It is to be remembered, however, that *Doeg* v. *Cook,* and also *Merritt* v. *McFarland,* 4 Cal. App. 391, [88 Pac. 369], were both cases in which the injuries that were the subject of litigation occurred within the limits of municipalities, and in both of those cases the negligence charged against the

public officer was of a gross character. Mr. Justice McFarland in his concurring opinion in the former of these cases said that "a street commissioner or road overseer could be held to the exercise of only a reasonable degree of care." This is the true rule and the question what constitutes "a reasonable degree of care" is primarily one for the jury, but it is also a question which the trial court may consider in passing upon a motion for a new trial. (*Morgan* v. *Robinson Co.*, 157 Cal. 351, [107 Pac. 695].) The degree of care exacted from a road commissioner in a rural district is quite different from that imposed upon a street superintendent in a city, and consequently the requirements respecting notice to persons charged with the repairing of rural roads are different from those governing the same subject matter in relation to urban officers. In Elliott on Roads (3d ed.), section 497, the rule is thus expressed:

"The difference in the extent of the servitude, in the authority of the local officers and in the nature and situation of rural roads, supplies strong reasons for discriminating actions against cities and towns from actions against counties and townships to recover damages for special injuries caused by negligence in constructing and maintaining roads and streets. In the case of a city, the territory is comparatively small, the streets are in almost constant use, the officers more numerous, the means of improving and repairing are at ready command, the necessity for vigilance and care is great, and the means of knowledge easily attainable, whereas in the case of a sparsely inhabited rural district it is essentially different. Negligence is seldom absolute, for whether an act is or is not negligent generally depends upon attendant facts and circumstances. What would be ordinary care in a country district, and in maintaining a secluded highway, may not be care of any reasonable degree in a populous city or in maintaining a much traveled street. In respect to the question of notice, which is often a conspicuous element in actions against public corporations to recover damages resulting from a special injury, the fact that the way is in a rural district and not in a city must often exert an important influence. Care is proportioned to the danger that may be reasonably apprehended, and duty is measured by the means, opportunities and obligations supplied and imposed by the law upon the officers to whom is committed the care and control of the public ways

of the state.  It would be plainly unjust to measure the obligations and duties of officers in charge of rural highways by the rules which govern officers placed in charge of the streets of a town or city.  What would be care and diligence on the part of the one class of officers may often be culpable negligence on the part of officers of the other class.''

It is also to be remembered that as a rule the attention of the supervisor is not called to that part of the roads in his district near the property line.  This fact is recognized by the legislature because it is provided that the supervisors may, in their discretion, establish a ''sidepath'' on a public highway for pedestrians and bicyclists.  (Pol Code, sec. 2643, subd. 12.)  ·We do not wish to be understood, in the present case as holding that, as matter of law, the defendant Pridham was not charged with notice of the defect in the road.  We are merely pointing out the conflict between his positive statement that he knew nothing of the defect in Brand Boulevard and the presumption which might arise from the long continued existence of the gully crossing the line of the sidewalk, that he should be charged with constructive notice of the danger to travelers on that highway.  If the trial court, without abuse of discretion, might have resolved that conflict in favor of the defendant, Pridham, on his motion for a new trial, then we are not at liberty to reverse its action.  We do not find an abuse of discretion and therefore we must affirm the order granting a new trial.

We might dispose of this appeal with the foregoing discussion, but as the case will probably be tried again, it may be well to discuss some of the other questions presented in the briefs.

Respondent Pridham contends that the evidence was insufficient to justify the verdict because it does not appear that he had been directed by the board of supervisors to repair the sidewalk.  He insists that since by section 2641 of the Political Code each road commissioner shall see to it that all orders of the board of supervisors pertaining to roads in his district are properly executed; that because by section 2643 of the same code the board of supervisors is given general ·supervision over the roads in the county; and that as by section 2645 the road commissioner, under the direction and supervision and pursuant to the orders of the board of supervisors, must keep the highways in good repair, therefore he

is under no duty to act upon a needful repair unless ordered so to do by the board. While it is true that the functions of a road commissioner are to be performed under the direction of the board of supervisors, yet he has certain positive duties to be executed of his own motion, and one of these is to keep the roads clear from obstructions and in good repair. He has at least the duty of reporting to the board cases requiring attention, and is culpable if he fails to do all that he may reasonably be expected to do toward providing for the repair of the dangerous places in the roads of his district. There is nothing in *Edwards* v. *Brockway,* 16 Cal. App. 627, [117 Pac. 787], in conflict with this view. That was a case arising under a freeholders' charter, by which the superintendent of streets was limited in his powers and could not even make repairs in a street without an order from the city council.

There was no conflict in the instructions designated by appellants. By instruction No. 5 the jury was informed that plaintiffs had a right to assume that the sidewalk was not a dangerous place, but in a reasonably safe condition for her to pass over with the exercise of ordinary care. By instruction No. 17, the court told the jurors that the highway included both the roadway and the sidewalks. By instruction No. 12 they were informed that: "The authorities having charge of highways outside of incorporated cities and towns are not bound to provide sidewalks on such highways, and have no power to do so, except under special circumstances not shown to exist in this case; and any one walking along such a highway has no legal right to assume, without investigation, that there is a sidewalk on any particular part thereof." It appears without contradiction that the county had accepted the boulevard with the sidewalks constructed along a portion of it. Where those sidewalks existed the traveler was as much entitled to depend upon their safety as if the board had by formal action set apart a strip of the road as a "sidepath." Instruction No. 12 merely informed the jurors that because sidewalks existed along a portion of the road that gave no basis for the belief on the part of the pedestrian that they continued throughout its entire length.

No other alleged errors require notice.

The order from which this appeal is taken is affirmed.

Lorigan, J., and Henshaw, J., concurred.