[Civ. No. 4893. Second Appellate District, Division Two.—June 16, 1928.]

CONTINENTAL INSURANCE COMPANY (a Corporation) et al., Appellants, v. CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

John Everson for Appellants.

Jess E. Stephens, City Attorney, W. B. Matthews, Special Counsel, and James G. Leovy for Respondent.

VALENTINE, J., *pro tem.*—This is an appeal upon the judgment-roll from a judgment of the superior court rendered upon plaintiffs' refusal to amend their third amended

complaint in an action to recover the amount of insurance paid by them for a loss by fire alleged to have been caused by the negligent construction and maintenance of electric wires in the City of Los Angeles.

A general demurrer to the third amended complaint was sustained on the ground that plaintiffs' claim should have been presented to the board of public service commissioners of the City of Los Angeles before suit was begun, and upon the ground that suit should have been brought against the said board. Appellants contend that under the provisions of the charter of the City of Los Angeles the board of public service commissioners is a special agency, only, of the city. Respondent contends that the board has complete authority over the city's electric system and is made solely responsible for the management of the same, and that the department of public service is, under the provisions of the charter, a municipal organization of independent functions, that it is a legal entity, and is to be conducted as a distinct and separate business enterprise of the city, under the management and control of the board of public service commissioners, and that suit must be brought against it and not against the city.

Under the view we entertain it is unnecessary for us to determine whether the city may be sued for the acts or omissions of the board for the reason that the other point raised by respondent on this appeal is that under the provisions of the charter no suit may be brought for money or damages on account of a wrongful act or omission in the department of public service unless and until a demand therefor has been made on the board of public service commissioners, and has been rejected in whole or in part as provided in the charter, and that such a demand is a prerequisite to the bringing of such a suit against either the city or such board.

"A presentation of a demand as a condition precedent to the beginning of an action against a municipal corporation, and a special provision limiting the time thereafter in which such action may be brought, are measures which, without doubt, the legislature may ordain. Thus the provision of the Los Angeles charter, which, in slightly varying form, is common to most charters, is a reasonable and valid provision as a condition precedent. That charter provides

(sec. 222) : 'No suit shall be brought upon any claim for money or damages against the city of Los Angeles . . . until a demand for the same has been presented as herein provided and rejected in whole or in part.' (*Farmers' & Merchants' Bank* v. *Los Angeles,* 151 Cal. 655 [91 Pac. 795].)'' (*Geimann* v. *Board of Police Commrs.,* 158 Cal. 748 [112 Pac. 553].)

It seems well settled, and for sound reasons, and is not denied by appellants, that the ·presentation of a demand in the manner prescribed by law is a necessary prerequisite to the beginning of such actions as the present one, and it follows that if the complaint failed to allege that this was done it failed to state a cause of action and the demurrer was properly sustained on this ground alone. The complaint contains an allegation that the demand in this case was presented to the city council and by them rejected before this action was begun. This squarely presents the question of whether the presentation of the demand to the city council was a compliance with the law and the provisions of the charter, as contended by appellants, or whether the demand under those provisions should have been presented to the board of public service commissioners, as contended by respondent.

The department of public service under the management and control of the board of public service commissioners was created by an amendment to article XVIII of the charter in 1911. (Stats. 1911, p. 2135.) A careful examination of the charter of 1889 and the subsequent amendments discloses a consistent evolution or development of the ideas and intentions of the people and the legislature as to this question of preliminary demand before suit was brought. It is to be regretted that limitations of space prevent more than brief quotations from the provisions, for some of them, apparently unrelated to the subject of claim and demand, are collaterally significant as to the development of the general plan.

Section 222 of article XXI of the 1889 charter (Stats. 1889, p. 510) provides as follows:

''No suit shall be brought upon any claim for money or damages against the City of Los Angeles, its Board of Education, or the Board of Directors of the Los Angeles Public Library, until a demand for the same has been

presented as herein provided, and rejected in whole or in part. If rejected in part, suit may be brought to recover the whole. Nor shall suit be brought against said city upon any such claim or demand, if the same shall be in whole approved and audited as provided herein; provided, that nothing herein contained shall be construed so as to deprive the holder of any demand of his right to resort to a writ of mandate, or other proceeding, against the said Council or any Board or officer of said city, to compel it or him to act upon such claim or demand, or to pay the same when so audited."

The provision "until a demand for the same has been presented as herein provided," relates to preceding section of article XXI. Section 208 provides, "all claims and demands whatever against the city of Los Angeles, except interest coupons and bonds of the funded debt shall be paid only on demands as herein provided for." Section 209 provides, "said demands except demands payable out of the school fund and library funds shall be presented to the council," etc. The balance of section 209 and sections 210 and 211 relate to approval by the mayor, and procedural matters. But section 212 provides: "All demands payable out of the school fund must, before they can be approved by the city auditor or paid, be previously approved by the board of education," and section 213 provides, "All demands payable out of the library fund must, before they can be approved by the city auditor or paid, be previously approved by the board of directors of the Los Angeles Public Library." The balance of sections 212 and 213 and sections 214 and 215 relate to details of procedure. Section 216 provides, among other things: "No payment can be made from the city treasury, or out of the public funds of said city, unless the same be specially authorized by law or this charter, nor unless the demand which is paid be duly audited as in this chapter provided." The term "audited as used in this charter with reference to demands upon the treasury, is to be understood to mean that said demands have been presented to, passed upon and approved by every officer and board of officers as required by this charter." At the December, 1902, election, various amendments to the charter were adopted by the voters and approved by the legislature in January, 1903. Article XVIII

of the charter had provided for the rights and duties of the city as to "Water and Water Rights," and section 192 prescribed certain rights and powers of the corporation (the city), as to construction, maintenance and operation of waterworks, etc., but section 192 of article XVIII as amended in 1903 (Stats. 1903, p. 563) created the water board, in the following language: "Sec. 192. There is hereby created for the purpose of managing and controlling all waters and water rights now, or which may be hereafter, owned by the city of Los Angeles, a department of said city to be known as the 'Water Department,' which shall be under the management and control of a board of water commissioners." The section then prescribes the details of the organization of the board, and its powers, among them to sue and be sued, and providing for the conveyance to the board "as special trustee for the city" all real and personal property belonging to the city and providing for the creation of the water revenue fund from which moneys shall only be withdrawn "upon demands authenticated by the signatures of the president and secretary of the board, or in the absence of the president, by the signatures of two members and the secretary."

Section 209 of the charter is amended to read as follows (Laws of 1903, p. 567): "Said demands, *except demands payable out of the school fund, the library fund or water revenue fund,* shall be presented to the city council," and adds a new section to the charter to be known as section 213½ as follows: "All demands payable out of the water revenue fund must be presented to the board of water commissioners and before they can be approved by the city auditor or paid, must be previously approved by the board of water commissioners," and prescribes the procedure and further: "Provided that in case the city auditor shall reject any such demand or if in his opinion said demand should be paid only in part, he shall return the same to the board of water commissioners, instead of to the council," and if such demand be again considered and approved by the board the objection of the auditor shall be thereby overruled.

Section 222 is also amended (Laws of 1903, p. 568), and the changes are significant as showing the consistent development of the plan and intention as new boards were created

to impose upon them the original duty of approving or rejecting demands, and reads as follows:

"No suit shall be brought on any claim for money or damages against the City of Los Angeles, its board of education, board of directors of the Los Angeles public library, or the board of water commissioners, until a demand for the same has been presented, as herein provided, and rejected in whole or in part. If rejected in part, suit may be brought to recover the whole. Nor shall suit be brought against said city, or said board of education, board of directors of the Los Angeles public library, or board of water commissioners upon any claim or demand that has been in whole approved and audited as provided herein; provided, that nothing herein contained shall be construed so as to deprive the holder of any demand of his right to resort to a writ of *mandamus* or other proceeding against the city council, or any board or officer of said city, to compel it or him to act upon such claim or demand, or to pay the same when so audited."

In 1907 the charter was again amended by adding another new section to be known as section 213¾ (Stats. 1907, p. 1167), providing that certain demands must be presented to the board of public works and providing as in the case of the water board, under section 213½, that if the city auditor rejects the demand, he shall return the same to the board of public works "instead of to the city council." And section 209 was amended (Stats. 1907, p. 1166) by adding another class of demands (i. e., those payable out of funds derived from bonds of the city and referred to in the new section 213¾ above), which shall not be presented to the council in the first instance, but to the board of public works. And sections 214 and 222 were amended so as to be consistent with the above new provisions.

In 1911 article XXI was amended so as to include certain sections not previously included. The sections relating to claims and demands were included in sections 216 and 222–g, inclusive (Stats. 1911, p. 2152). We find that section 217 is the same as section 208 in the original charter, and provides as follows:

"Every claim and demand against the city . of Los Angeles, except as provided in the preceding section, shall

be first presented to and approved by the board, commission or officer authorized by this charter to incur the expenditure or liability represented thereby; if such approval be made by a board or commission the same shall be evidenced by a vote of two thirds of the members thereof, taken with the ayes and noes and spread upon the minutes, and the action of such board or commission, and the date thereof, must be endorsed on such demand, and signed in writing by the president or by two members thereof, and the secretary or clerk thereof; and if such approval be made by an officer he, or his chief deputy, shall endorse the same by his signature in writing. In all cases the date of such approval shall be given.''

Section 218 provides, among other things, that at the end of each month the ''board, commission or officer having the management or control of any department or office'' shall cause a pay-roll of employees to be made out, which pay-roll shall be certified ''as herein provided in the case of demands against the city.''

Section 219 provides for approval by the city auditor of all demands approved by any board or commission, but only ''*provided* that such approval by the city auditor shall be valid only for such amount as shall have been approved by the board or commission.'' There is a change in the procedure here from that provided in the new section 213½ added in 1903 referred to above, where the city auditor was directed to return the claim to the board if he rejected it in whole or in part. By section 219 (Stats. 1911, p. 2153) the auditor is directed to transmit the claim to the finance committee of the council, and section 220 provides the procedure by the finance committee. This would seem to be a change in the manner of ''checking'' rather than indicating any change in policy or principle. Sections 221 and 222 regulate procedure and are not material to the question of demand. The next material section is section 222–g. This is the original 222 as amended in 1903 and 1907, but the change in the amendment of 1911 (sec. 222–g) is significant in view of the creation of the new boards and commissions since the adoption of the charter in 1889. This section 222–g was again amended in 1921 and as it was in force as so amended when the instant case was begun by the

filing of the complaint, November 22, 1923, the section as so amended is here quoted in full (Stats. 1921, p. 1817):

"Sec. 222–g. No suit shall be brought on any claim for money or damages against the City of Los Angeles, its Board of Education, Board of Directors of the Los Angeles Public Library, Board of Public Works, or the Board of Public Service Commissioners, or any officer or board' or commission of the city until a demand for the same has been presented as herein provided, and rejected in whole or in part. If rejected in part, suit may be brought to recover the whole. Except in those cases where a shorter period of time is otherwise provided by law, all claims for damages against the city must be presented within six (6) months after the occurrence from which the damages arose, and all other claims or demands shall be presented within six (6) months after the last item of the account or claim accrued. Nor shall suit be brought against said city, or any board, officer or commission thereof, upon any claim or demand that has been in whole approved and audited as provided herein, provided, that nothing herein contained shall be construed so as to deprive the holder of any demand of his right to resort to writ of *mandamus* or other proceeding against the City Council, or any board, commission or officer of said city, to compel it or him to act upon such claim or demand, or to pay the same when so audited."

So that it is apparent that the general plan or scheme and intention of the framers of the charter and of the legislature was first to provide for the presentation of a demand as a necessary prerequisite to the maintenance of a suit to the end that the city should always be given an opportunity to pay before being subjected to litigation and second, as its business and administrative responsibility increased to create new boards and commissions with the object and to the end of relieving the council of many of its responsibilities and enabling it to function, more especially as a distinctive legislative body. After the adoption of the charter as new boards and commissions were created, and broad powers and duties, and independent functions were given to them, so, consistently, was the charter amended from time to time to make its provisions harmonize with this main purpose, and in this connection to provide that before

paying any demand it must first be presented to and approved by the board or commission authorized by the charter to incur the expenditure or liability represented. The entire plan and scheme of approving and auditing every demand disclosed by the provisions of the charter quoted and referred to above makes it apparent that the prerequisite presentation of a demand in accordance with the provisions of the charter requires that that demand be first presented to the board or commission without whose approval the council may not order it paid, and this without reference to whether a suit is subsequently brought against the city or against the board. Appellants in quoting the language of the charter (sec. 217 above) substituted the word "indebtedness" for "expenditure," and argue that the section indicates that claims based upon contract only are intended. If the word were "indebtedness" the point might merit consideration, but the word is "expenditure." The demand should first be presented to the board, so that if it approved the demand it could recommend the "expenditure." (*Geimann* v. *Board of Police Commrs., supra.*)

In the instant case the demand should have first been presented to the board of public service commissioners before action was brought. This was not done and no allegation that it had been done was contained in the complaint, and the demurrer was properly sustained.

Judgment affirmed.

Craig, Acting P. J., and Thompson, J., concurred.