[Civ. No. 5099. Third Appellate District.—July 2, 1934.]

MUSTO–KEENAN COMPANY (a Corporation), Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

EAST–WEST REFINING COMPANY (a Corporation), Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

Holbrook, Taylor, Tarr & Horton for Appellants.

Erwin P. Werner, City Attorney, Frederick von Schrader, Assistant City Attorney, and Arthur Loveland, Deputy City Attorney, for Respondent.

PULLEN, P. J.—This is a consolidated appeal by plaintiffs from judgments rendered in favor of defendant after general demurrers had been sustained without leave to amend. Both plaintiffs were directly affected by the street improvement hereinafter set forth, hence the consolidation.

In 1928 a proceeding for the improvement of Soto and Lugo . Streets in the City of Los Angeles was instituted under the Boundary Line Act of 1911 as amended (Stats.

1911, p. 1018), by the passage of an ordinance of intention by the council of the City of Los Angeles. Notice of this ordinance of intention was published and notice of public work was posted and published as required by said act; notice of the hearing of protests was then duly published as provided in the act, which directed that, "any owner of property liable to be assessed for said work may make written protest against the proposed work or against the extent of the district to be assessed, or both, and may also file objections to the proposed grades. Such protests or objections must be in writing and be delivered to the Clerk of the City Council or Board, and no other protests or objections shall be considered".

Thereafter, no protests having been filed by appellants herein, the council of the City of Los Angeles ordered the work to be done as provided by said Boundary Line Act.

After the completion of the improvement appellants filed claims for damages to their respective properties with the council of the City of Los Angeles. Thereafter actions were commenced by the respective plaintiffs, which actions were consolidated for trial. General demurrers were interposed, which demurrers were overruled and answers filed by the City of Los Angeles. Thereafter, at the trial and before the impaneling of the jury, the city renewed its demurrers, which demurrers were sustained without leave to amend, and judgments were entered in favor of the City of Los Angeles, from which judgments this appeal is prosecuted.

The complaint in the Musto-Keenan case alleges, among other things, ownership of a tract of land facing Soto Street and adjacent to the Santa Fe railway right of way, with the entrance to their marble-cutting and polishing mill on Soto Street; that the floor of the plant and Soto Street were on the same grade; that defendant commenced the construction of an underpass beneath the Santa Fe railroad at Soto Street and for that purpose excavated in Soto Street in front of plaintiff's property to allow a clearance of 15 feet under the railroad tracks; that the excavation in front of plaintiff's property cut off ingress and egress to and from said property from any public street or alley and undermined the foundation footings and supports of the mill by destroying the lateral support; that the construction of the underpass and its attendant excavation was com-

menced by defendant without giving plaintiff any notice whatsoever of its intention so to do, and without first compensating or offering to compensate plaintiff for the damage to its property. Then followed an allegation of damage and an averment that within six months after the said injury to its property, plaintiff filed its claim for damage with the proper officer of the City of Los Angeles, which claim was thereafter rejected by the city council of said city. The complaint of the East-West Refining Company alleges a similar set of facts and circumstances and likewise prays for damages.

The answers filed to these complaints denied the allegations and set up two affirmative defenses, one that the change of grade with resultant damage to plaintiffs' properties was done and performed by defendant under and pursuant to the provisions of an act known as the ''Boundary Line Act of 1911'' and that plaintiffs each failed to make or file any protest thereto as provided by section 4 of said act. As a second affirmative defense, defendant alleges that the causes of action are barred by reason of plaintiffs' alleged failure to file claims with the board of public works of the City of Los Angeles, which defendant alleged and contended was the board having authority to incur the expenditure represented by the claims upon which these actions were based.

It was stipulated by counsel that the claims referred to were filed with the city clerk of the City of Los Angeles prior to the commencement of this action, and after due consideration denied; that a certified copy of the ordinance of intention be introduced in evidence, as was a certified copy of the ordinance ordering the work together with notice of street work, the latter having been posted in compliance with the law. It was also stipulated that postcard notices were sent containing the same notice that was set forth in the resolution of intention. It was also stipulated that no protests were filed by plaintiffs at the hearing provided for in the ordinance of intention.

In support of the contention of the city that the complaint in each of the above-entitled actions does not state facts sufficient to constitute a cause of action against the City of Los Angeles, two points are presented by the demurrer, first, the complaints do not allege that plaintiffs made or filed any protest against the (a) proposed improvement, (b)

the extent of the assessment district, or (c) the proposed grade, as provided by section 4 of the Boundary Line Act of 1911, and secondly, the complaints do not allege the plaintiffs filed any claim for damages by reason of said improvement with the board of public works of the City of Los Angeles, as provided by section 363 of the charter of said city.

The first point to be considered is whether or not appellants were called upon to file any protest against the proposed grade as provided by section 4 of the act.

■ Appellants admit they did not file claims for damages with the board of public works of the City of Los Angeles or make objections to the hearing provided in the ordinance of intention but they contend that the excavation in Soto Street barring them from access to their properties constitutes not only mere inconvenience to them but an actual physical damage such as is contemplated by section 14 of article I of the state Constitution, which provides that "private property shall not be taken or damaged for public use without just compensation first having been made into court for the owner, . . . which compensation shall be ascertained by a jury unless a jury being waived, as in other civil cases in a court of record as shall be prescribed by law . . . " As to that particular contention we believe appellants are in error. While it is true the Constitution provides for compensation for the taking or damage of private property for public use, nevertheless that is a constitutional right that a property owner may waive by failing to comply with such procedural step as may be prescribed by the act under which the public improvement was constructed. (*Bigelow* v. *Ballerino,* 111 Cal. 559 [44 Pac. 307] ; *Sala* v. *City of Pasadena,* 162 Cal. 714 [124 Pac. 539].) Whether or not in this case plaintiffs failed to make due and timely objection will be discussed later.

■ It is further contended that no notice having been given plaintiffs of the proposed change of grade or grade separation, no waiver of damages can be predicated upon section 4 of the Boundary Line Act of 1911, and that the council of the City of Los Angeles is the only board authorized to incur liability for change of grade and is therefore the proper body with which to file claims for damages arising therefrom.

Section 4 of the Boundary Line Act provides, "The grade to which any work shall be done or improved shall be such as may be shown on the plans or profiles therefor, or it may be done on such a grade as may have been formally established by the city council or board. If any official grade has already been adopted or established for any of the streets, avenues or other places, or property proposed to be improved, it shall be lawful for the resolution of intention to provide that such work shall be done to new grades or grades different from those established or adopted, and shall refer to the plans, profiles or specifications for the description of the grade at which the work is to be done. Any property owner whose property is to be assessed . . . may . . . make objection in writing to the proposed grade or proposed modification of grade. A failure to make objection in writing . . . shall operate as a bar to any claim for damages . . . "

In the title to the resolution of intention referring to the proposed improvement of Soto Street no reference to grade is made but in the resolution itself it is provided, "that Soto street . . . excepting such portion of said street as is occupied by any railroad track or tracks, the space between the rails and for two feet on each side thereof, and between the tracks, if there be more than one, be improved by certain grading and rolling . . . " "Section 2. That all the work aforesaid shall be done in accordance with and to the grade shown on special plans, profiles and detailed drawings . . . on file in the office of the City Engineer of the City of Los Angeles. Said plans, profiles, detailed drawings and specifications are hereby referred to for a full and detailed description of said proposed work or improvement and for the description of the grade to which the work is to be done, and are made a part hereof."

It will be observed that it was not provided in the resolution "that said work shall be done to new grades or grades different from those established or adopted". It was admitted that the grades of Soto Street had already been established or adopted and that the new work was done to a new grade or a grade different from that already established, and it is contended by appellants that the ordinance and notice did not comply with the provisions of the act in that it gave no notice or intimation that the work was

to be done to new grades or a grade different than the existing grade.

It would appear, therefore, that plaintiffs are correct in their claim that they were given no notice of any proposed change of grade. It was not made to appear in any of the notices that the grade to which the work was to be done would be different from the established grade. This information is essential in that the Boundary Line Act provides that ''a failure to make objection in writing at such time shall be deemed to be a waiver of all objections to the proposed grade or proposed modification or change of grade and shall operate as a bar to any claim for damages . . . on account of the performance of the work to such grade or changed grade''.

The act combines notice of the proposed improvement, stating the kind or class of work, and secondly, if the improvement is to be done to a new or different grade, the resolution shall so state. By this provision it is possible to combine the two steps in the one procedure, namely, the proposed improvement and change of grade. That being true we believe appellants are correct in their contention that an analysis of section 4 of the act shows the first two paragraphs of that section provide the method for the improvement, the general designation of the class or kind of work, such as grading, paving, sewering, etc., and the fixing of a day for the hearing of protests thereto; the third paragraph of section 4 refers to the grade, that is, the established line to which the street is to be constructed, the notice to the owner of the property who is to be assessed therefor, where and when he may protest the new grade, or modification of existing grade, and the penalty for failure to so object.

When it is recalled that the resolution of intention, when published, constitutes the only notice provided by law and must be ''such as may reasonably be held to afford adequate opportunity for knowledge of the designed improvement by the property owner who exercises reasonable care in the matter of his property'' (*Sala* v. *City of Pasadena, supra*), it is apparent that the notice shall inform an owner of any proposed change of grade, and he shall not be compelled to resort to conjecture nor to an examination of technical plans and profiles to determine if the

work is to be done to the established grade or to new grades. In other words, the notice to an interested party should be sufficiently clear to place him upon notice and not merely upon inquiry.

The act requires that before ordering any work done the resolution shall, among other things, briefly describe the work to be done. In the resolution in question, Soto Street was to be improved "by certain grading and rolling" and "in accordance with and to the grade shown on special plans . . . on file in the office of the City Engineer . . . " and "that said plans are referred to . . . for a description of the grade to which the work is to be done . . . "

The use of the word "grading" does not import a new "grade". "Grading" as used in its commonly accepted meaning is a physical change of the earth's structure by scraping and filling in the surface of the highway to reduce to a common level, whereas the "grade" is the established point to which the work is to be done. It is the hypothetical line to which the work is to be constructed. The completion of the proposed work resulted in the excavation of a subway or grade separation whereby Soto Street went under the tracks of the railroad with a clearance of 15 feet and the necessary gradual incline or approach on each side thereof.

That the act itself contemplated such a distinction and difference is shown by a study of section 2 of the act, wherein it is provided that whenever the public interest and convenience may require, the legislative body of the county or municipality are empowered to order the improvement of certain rights of way by (a) "grading or regrading . . . (b) The construction or reconstruction of . . . tunnels, subways or viaducts."

The purpose of including street improvement and change of grade was undoubtedly to permit a change of grade proceeding to be instituted jointly with the improvement of a street, in the same resolution of intention. We cannot believe a mere reference to plans and specifications is sufficient notice when the resolution itself is silent as to a contemplated change of an established grade and fails to advise the property owner of the particular work as pertains to the facts here, where a subway or grade separation was made. Such information is not conveyed to a prop-

erty owner by reference to "grading" when the purpose of the work is in fact a change of grade, nor is it sufficient to merely refer to profiles, plans and specifications for detailed information as to location of the grade when nothing is contained in the notice warning the owner of any proposed change from the established grade.

▇ Proceedings upon which street assessments are based are *in invitum*, that is, the property of a citizen is taken or assessed without his consent, and the courts will not use extrinsic aids or other intents to avoid the effect of uncertainty therein. (19 Cal. Jur., p. 166.) Neither may a procedure be prescribed that will in effect destroy or substantially injure the protection to private property guaranteed by the Constitution. (*Potter* v. *Ames*, 43 Cal. 75.) We are of the opinion, therefore, that appellants did not have sufficient notice of the proposed change of grade.

▇ Respondent also contends that the complaint does not state a cause of action in that it does not allege that appellants filed any claims for damages by reason of said improvement with the board of public works of the City of Los Angeles as provided by section 363 of the charter of the City of Los Angeles. Said section provides, "every claim and demand against the city, except as provided in the preceding section, shall be first presented to and approved in writing by the board, officer, or employee authorized by this charter to incur the expenditure or liability represented thereby".

Appellants insist, and we think correctly, that the city council was the body that was authorized by the charter of the City of Los Angeles to incur the expenditure or liability of the improvement of Soto Street. Respondent contends that the word "Board" as used in section 363 of the charter does not include the city council. We think, however, that this is not correct. It was the city council that inaugurated the proposed street work by adopting an ordinance of intention. It was this ordinance of intention of the council of the City of Los Angeles that ordered the improvement and directed the city engineer to make a diagram of the property affected or benefited, and it was before the city council that any and all persons having objections to the proposed work were directed to appear, and it was the city council that directed the board of public works to

proceed, and it was to the council that all bids were submitted and by them considered and the lowest responsible bidder selected by the council for doing the work. In case of abandonment of the work by the council before the letting of the contract, it was the council that was authorized to order paid the incidental expenses connected therewith, and it was to the board that the assessments were returned.

By section 37 of the charter of the City of Los Angeles the council was in connection with the improvement of streets, etc., "to make the costs and expenses thereof, including all incidental expenses and any damages to private property occasioned thereby, to be paid from the general fund of the city or from such other fund as the council may designate".

It is clear from a study of the charter itself that the city council is the legislative body of the municipality and from the council the various boards and commissions derive their authority as well as the funds with which they operate. Section 369 of the charter provides, "No department-bureau, division or office of the City Government shall make expenditures or incur liabilities in excess of the amount appropriated therefor."

Counsel has devoted a large portion of their brief to study of this phase of the question, but it would be of no particular value to engage at length in a discussion of the various provisions of the charter and we will content ourselves by stating merely that the city council is the board to which the claim or demand of appellants was properly presented. ■ This court may take judicial knowledge of the area of the City of Los Angeles and the great diversity of proprietary and governmental interests with which it is concerned and it would be a great hardship and inconvenience to demand that a citizen at his peril select from the great number of boards and commissions authorized by the charter the proper subordinate with whom to file his claim.

We are therefore of the opinion that the ordinance of intention failed to notify plaintiffs or to describe that portion of the work and improvement which caused the damage of which they here complain, and they, having had no notice of the purpose of the city to construct a subway and change of grade of Soto Street, cannot be said to

have had an opportunity to file a protest as provided in section 4 of the Boundary Line Act of 1911.

We must also hold that in filing their claims with the council of the City of Los Angeles they properly presented the same to the only board having authority to incur the expenditure, and that they were properly presented and filed.

The judgments in the above-entitled action are therefore reversed.

Plummer, J., and Thompson, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 30, 1934.