[L. A. No. 15375. In Bank.—December 31, 1935.]

ALICE DOUGLASS, Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

124

Zach Lamar Cobb and Earl A. Littlejohns for Appellant.

Erwin P. Werner, City Attorney, Frederick von Schrader, Assistant City Attorney, and Arthur Loveland and D. M. Kitzmiller, Deputies City Attorney, for Respondent.

Harold P. Huls, City Attorney (Pasadena), and John W. Holmes, Deputy City Attorney, as *Amici Curiae* on Behalf of Respondent.

SHENK, J.—This is an appeal from a judgment in favor of the defendant City of Los Angeles in an action to recover damages for personal injuries suffered by the plaintiff when

an automobile she was driving collided with an abutment of a bridge alleged to have been maintained in a dangerous and defective condition by the city on Adams Street.

At the trial the city interposed an objection to the introduction of any evidence on behalf of the plaintiff, on the ground that it did not appear from the pleadings that a claim had been filed with the city council as a prerequisite to the maintenance of the action. The objection was sustained and judgment was accordingly entered for the city.

The complaint alleged that prior to the commencement of the action a claim for damages had been presented to the board of public works and had been rejected. The city, apparently assuming that the presentation of a claim to the board of public works was necessary, contended that the plaintiff could not sue unless a claim had been theretofore filed also with the clerk of the city council as required by the act of 1931 (Stats. 1931, p. 2475), which provides that "whenever it is claimed that any person has been injured or any property damaged as a result of the dangerous or defective condition of any public street, highway, building, park, grounds, works or property, a verified claim for damages shall be presented in writing and filed with the clerk or secretary of the legislative body of the municipality, county, city and county, or school district, as the case may be, within ninety days after such accident has occurred . . . "

The accident involved herein occurred in June, 1932. The questions presented are whether the filing of the claim for damages with the board of public works alone was sufficient as a prerequisite to suit or whether the filing of the claim with the city council alone as required by the statute was necessary and sufficient or whether the claim should have been filed with both municipal bodies before suit could be commenced. These questions are of importance, both to the city and to those who have and will press their claims against the city, also in view of the great number of personal injury cases pending in the lower courts against the city involving alleged negligence on the part of its officers and employees. A somewhat extensive review of the law on the subject, both charter, statutory and judicial, is deemed necessary in order to set at rest a problem that seems to have perplexed the city authorities, claimants against the city, and the lower courts.

The problem must be resolved under pertinent provisions of the law in this state, for the reason that no applicable law in other jurisdictions points to a satisfactory solution, and it will be approached, first, with relation to the general law of the state.

Prior to 1911 and until 1923, in this state persons who were injured by reason of the negligence of public officers in the maintenance of public streets and highways were compelled to seek redress against the public officers themselves, who were then personally liable. Following the injuries suffered by Mrs. Wurzburger in May, 1910, by reason of the alleged negligent maintenance of a public highway in Los Angeles County, and the verdict against Supervisor Pridham (see *Wurzburger* v. *Nellis*, 165 Cal. 48 [130 Pac. 1052]), the legislature in 1911 enacted a statute limiting the liability of the officer who had charge of or whose duty it was to care for or repair any street or highway to cases where such officer had *actual notice* of the dangerous or defective condition thereof. (Stats. 1911, p. 1115.) In 1919 the act of 1911 was repealed and the subject-matter reenacted with additional provisions not here pertinent, but eliminating the word "actual" before the word "notice" as incorporated in the original statute. (Stats. 1919, p. 756.) In 1923 an act was passed further limiting the liability of members of any board of supervisors, board of city trustees, city council, board of education, or board of school trustees on account of the negligent acts of their appointees or employees. (Stats. 1923, p. 675.) Section 2 of that act then provided that counties, municipalities, and school districts should be liable for injuries to persons and property resulting from the dangerous or defective streets, highways, etc., in all cases where the governing or managing board of such county, municipality, school district or other board, officer or person had knowledge or notice of the defective or dangerous condition of any such street, highway, etc., and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice to remedy such condition, and take such action as might be reasonably necessary to protect the public against such dangerous or defective condition. ▮ Prior to the act of 1923, municipalities, counties and school districts were not liable for negligent acts or omissions of their officers and employees; and it is solely by reason of that statute and amendments following it (see Stats. 1933,

p. 2147), that municipalities, counties and school districts are liable for the tortious acts or omissions of their officers and employees. It should be noted here, however, that the taking and damaging of private property without compensation first paid, as prohibited by section 14 of article I of the Constitution, is in the field of tortious action (24 Cal. Jur., p. 589 et seq.) ; but that is a liability imposed by the Constitution and not by statute.

■ The important question of the liability of municipalities, counties and school districts for the tortious acts or omissions of their servants is a matter of general state concern, and not, as contended by the plaintiff, a municipal affair. As this point is now regularly raised we confirm the "foreword" stated by this court in *Rafferty* v. *City of Marysville*, 207 Cal. 657 [280 Pac. 118], that it would be an anomalous situation if a city could, by adopting a freeholders' charter, exclude itself from the operation of a general law of the state imposing a liability on municipalities generally for the negligent acts or omissions of its servants in the maintenance of the public streets, on the theory that such city is independent of general laws in municipal affairs. The question of the safety of public ways is "a matter of state concern, and the obligation of a city to make its highways reasonably safe for general use cannot be chartered away even though a municipality should attempt to do so". (207 Cal., p. 665.)

■ It must inevitably follow that if a claimant in this state is to obtain redress against the city itself for injuries received by reason of the negligent acts or omissions of its servants, such claimant must rest upon the liability imposed by the general statute, and must conform with the requirements of that statute in enforcing that liability. One of the requirements of the general statute since 1931 has been that as a prerequisite to suit to enforce such liability against a city, the claimant must have filed with the clerk of the legislative body of the city, here the city council, a verified claim for damages (Stats. 1931, pp. 2475, 2477). ■ In the recent case of *Spencer* v. *City of Calipatria*, 9 Cal. App. (2d) 267 [49 Pac. (2d) 320], it was held that the provision of the statute in question requiring the filing of a verified claim is mandatory, that the city could not waive the requirement as a prerequisite to suit and that the filing of an unverified claim was ineffectual. A petition for a hearing in

this court in that case was denied on November 22, 1935. The holding therein made is hereby declared to be the law in all cases coming within its purview.

We pass to the contention, very earnestly urged by the plaintiff, that inasmuch as the purpose of laws requiring notice to municipal authorities of claims against it, the rejection of which may result in suit, is to inform the city of the claim to the end that the city may, if it desires, approve the claim and thus avoid litigation, then such purpose was subserved by the presentation of the claim as was done in this case, to the board of public works.

This contention requires a consideration of the related prior and present provisions of the city charter and the discussion must necessarily exclude from consideration all claim for the expenditure of funds in the several departments of the city government over which the respective governing or administrative officers or boards have charge and control, with specific authority in the charter to order the expenditure thereof. These funds are derived from taxes, licenses and other city revenues, and from the operation of municipally owned and controlled self-supporting enterprises maintained and operated by the city in its proprietary capacity, such as the department of water and power. We are here especially concerned with the authority of the board of public works, under power specially conferred by the city charter, to incur a liability for the tortious acts of its officers and the employees in its department; for, as will be seen, it is only by reason of specific authority granted by the charter to incur the liability, that the claims for damages for tort must be presented to that board.

The city charter has always provided that "no payment shall be made from the city treasury or out of the funds of the city unless the same be authorized by law or this charter, nor unless the demand which is paid be duly audited as in this charter provided". (Original sec. 216, Stats. 1889, p. 508; Stats. 1925, p. 1137.) The present charter (sec. 361) provides that the term "audited" as used in section 360, shall mean that there has been presented to or received by the controller adequate evidence that the demand has been "approved by every board, officer or employee required by this charter to approve the same; . . . that the payment is just and lawful and has been authorized by law and that

appropriation for the same has been made . . . " Section 222 of the original charter provided that "no suit shall be brought upon any claim for money or damages against the city of Los Angeles, its board of education, or the board of directors of the Los Angeles Public Library, until a demand for the same has been presented as herein provided and rejected in whole or in part . . . " A compliance with this section was held to be mandatory. (*Farmers & Merchants' Bank* v. *City of Los Angeles*, 151 Cal. 655 [91 Pac. 795].) The phrase "as herein provided", used in the last-quoted section of the original charter, had reference to other sections of the charter among which, pertinently, were sections 208 and 209 providing that "all claims and demands whatever against the city of Los Angeles", other than claims and demands on city bonds, shall be presented to the *city council*, except demands payable out of the school fund and the library fund.

Upon the establishment, by charter amendment in 1903, of the water department, to be administered by the board of water commissioners, section 209 was amended to except from the requirement of presentation of claims to the city council all demands payable out of the water revenue fund and section 213½ was added providing that demands payable out of that fund should be presented to and approved by the board of water commissioners. (Stats. 1903, p. 567.) Section 222 was likewise amended in 1903 to provide that no suit should be brought against the board of water commissioners until a demand had been presented to that board and rejected in whole or in part. (Stats. 1903, p. 568.)

Section 209 was again amended in 1907 providing a further exception to the requirement that demands be presented to the city council, namely, demands payable out of funds derived from the sale of certain bonds issued by the city, which demands were required by section 213¾ (added in 1907) to be presented to the board of public works. (Stats. 1907, pp. 1166, 1167.)

In 1911 for the first time we find the language of the charter which is of significance in the solution of the problem under consideration. It is found in section 217 (Stats. 1911, p. 2152). With exceptions not material here that section provides: "Every claim and demand against the city of Los Angeles . . . shall be first presented to and ap-

proved by the board, commission or officer authorized by this charter to incur the expenditure or liability represented thereby . . . '' The substance and legal effect of old section 217 was incorporated in section 363 of the new charter of 1925 and is now in effect.

The exceptions contained in section 222 of the original charter and as supplemented by the further exceptions by charter amendment in 1903 and 1907 above noted and in 1911 (sec. 222g, Stats. 1911, p. 2155), were carried forward in the amendment of section 222g in 1921 (Stats. 1921, p. 1817), but were eliminated in 1925 and the subject-matter incorporated in section 376 of the new charter as follows: ''No suit shall be brought on any claim for money or damages against the city of Los Angeles, or any board or officer of the city, until a demand for the same has been presented, as herein provided, and rejected in whole or in part . . . ''

When the specific designation of the board or commission to which a demand must be presented, rather than to the city counsel, was eliminated in 1925, and the general provisions of section 376 came into being, much confusion arose as to where demands should be filed, as a prerequisite to suit, whether with the board or commission in whose department the claim arose or with the city council. Apparently no serious difficulty was experienced by claimants against the city or by the city authorities on the subject until the elimination of the specific exceptions and the adoption of the general language of section 376 in the new charter. That general language is that no suit shall be brought for money or damages against the city or any officer or board of the city, until a demand has been presented ''as herein provided''. The last-quoted phrase must refer to the pertinent provisions for presentation of claims and demands in section 363. There it is provided that every claim and demand against the city, with exceptions not material, shall be first presented to and approved in writing by the board, officer or employee *authorized by the charter to incur the liability.*

██ The demand here pressed against the city is an alleged liability for the tortious acts or omissions of officers or employees in the department of public works. Unless the board in charge of that department is *authorized by the charter to incur that liability,* there can be no obligation or duty on the part of that board to approve a demand based

on that liability. We look in vain for any provision of the charter constituting any authority whatsoever for any officer or board of the city to incur the liability here sued on. ▮ Authority granted presupposes a voluntary delegation of power. And authority so delegated is strictly construed against the existence of the power. (*Ex parte Daniels*, 183 Cal. 636 [192 Pac. 442, 21 A. L. R. 1172]; 12 Cal. Jur., p. 801.)

The board of public works has no authority, either express or implied, to incur such a liability. In truth, it would appear to be an unheard of thing in municipal law even to attempt to authorize a municipal officer or board to incur a liability for a tort. The liability is not created that way. It is imposed on the municipality by virtue of the superior authority of the sovereign state and results in no sense from a voluntary assumption of liability under power previously granted. Redress on account of such a liability must be afforded by the municipal authority having control over a fund from which the claim can be paid. The board of public works has no such fund. It is limited in its authority to order the expenditure of moneys from the city treasury to its budget allowance established by action of the mayor in conjunction with the director of the bureau of budget and efficiency (Charter, sec. 343), and approved by the city council (Charter, secs. 347–350), or as such budget allowance may be supplemented by a transfer to it of an additional sum by special appropriation under the authority of section 354 of the charter. This board is prohibited from making any expenditure from its fund in excess of its budget allowance unless specially authorized by the city council. (Charter, sec. 351.) ▮ It is not enough to say that the board of public works had the authority to contract the work or improvement or to remedy the defective or dangerous condition of the street. It does not follow that the board was therefore authorized by the charter to commit the civil wrong in the execution or maintenance of the work. As stated, the redress for the wrong does not flow from authority granted but from liability imposed by a superior governmental power.

By section 361 the controller is prohibited from auditing a claim against the city unless the payment is authorized by law and an appropriation for the same has been made. The

charter does not contemplate that the budget allowance for the board of public works shall include an item to cover payment for damages for a civil wrong that may thereafter be committed by the officers or employees of the board. That board has no power to make an appropriation from city funds in settlement of a claim for damages for injuries to person or property asserted against the city. If it should attempt to do so its approval of the claim would not constitute authority for its audit by the controller, at least until an appropriation therefor had been made by the city council. And such approval would not be binding on the city council to compel an appropriation. ■ The theory of the law requiring the filing of a claim before suit contemplates that if the claim be just and proper the municipal officer or body with which the claim is filed shall have power to approve payment without suit and make such approved claim a valid claim against the city without the necessity of the claimant reducing the demand to judgment. If the board has no such authority the filing of a claim with it would be futile and would thus fail to bring notice of the claim to the municipal authority having power to order the claim paid, without suit. The reason for this is obvious. Claims for damages arising from the tortious acts or omissions of the officers and employees of the city are, almost without exception, for an unliquidated amount. The amount might be so enormous as to be entirely beyond the power to pay out of the current revenues of the city or any of its departments. When liability for damages is conceded by the city, as in the case of the destruction of the St. Francis dam, and the appalling resultant damages of many millions of dollars, or when a judgment liability is imposed by law as involved in *Le Clerg* v. *City of San Diego,* 218 Cal. 494 [24 Pac. (2d) 156], and *Title Guarantee & Trust Co.* v. *City of Long Beach,* 4 Cal. (2d) 56 [47 Pac. (2d) 472], the only municipal authority with power to provide the means of payment, either by general bond issue duly authorized or by tax levy of one-tenth per annum, is the city's legislative body.

■ It therefore appears obvious that the municipal authority to which a claim against the city for damages for injuries to persons or property in consequence of a civil wrong committed by the officers, or employees, liability for which is now imposed on the city itself by general law,

should be presented, is the municipal authority which under the law has the power to provide for its payment. 
That authority, both under the city charter and under the general law of 1923, with reference to the claim here involved, is the city council and the filing of such a demand with the board of public works was ineffectual and unnecessary.

The establishment of the rule as above indicated makes for certainty in the procedure and is workable from a practical standpoint. When such a claim is filed with the city clerk it is, of course, deemed to be thereby presented to the city council. When the claim arises in any department of the city, with certain exceptions later to be noted, the usual course no doubt has been and would be for the council to refer the matter of the claim to the board or officer in whose department it arose, or to the legal department of the city, or to both, for investigation and report as to the status of the claim as a valid or invalid demand against the city. Upon such investigation and report the council would be in a position to approve the same and make an appropriation for the payment thereof, or to reject the claim, as in the charter provided.

The departments of the city which would fall within the exceptions to the rule here announced are first, the department of water and power, and, second, the harbor department.

The department of water and power is conducted by the city in its proprietary capacity. This department has control of its own revenues and disbursements and in the ordinary course of its management would not be dependent on the city council for an appropriation to meet a demand for damages for the negligence of its officers or employees. The liability of the city for such negligence, through the operations of such a department, was established long before the enactment of the statute of 1923. (*Davoust* v. *City of Alameda*, 149 Cal. 69 [84 Pac. 760, 9 Ann. Cas. 847, 5 L. R. A. (N. S.) 536].) And the necessity of presenting a claim to that board as a prerequisite to suit was properly declared in *Continental Ins. Co.* v. *City of Los Angeles*, 92 Cal. App. 585 [268 Pac. 920].

Likewise the harbor department, established by charter amendment in 1911 (Stats. 1911, p. 2125), may be classed

as a department under the management of an independent board with power to fix the charges for its own revenue and having control of the disbursement thereof. In the ordinary course of the business of that department it is assumed that its own funds would be sufficient to satisfy any claims for damages arising in that department. In *Huey* v. *City of Los Angeles,* 137 Cal. App. 48 [29 Pac. (2d) 918], suit was brought against the city on account of the death of a boy who was killed on a drawbridge, the maintenance and operation of which was under the charge and control of the board of harbor commissioners. It was held that an action was not maintainable against the city in the absence of a showing that a claim had been filed with that board.

The other exception logically flowing from the charter provisions and the general law is a demand arising in the department of education. The original charter (secs. 69–80, Stats. 1889, p. 479) had made elaborate provisions for the election of a board of education with full control over the amount of money necessary to be raised for the school department and the disbursement thereof freed from interference by the city council, but as in the charter specially provided. These provisions remained in the city charter until the exclusion therefrom of the fiscal processes of the board of education as matters of general state concern and the consequent amendment of article VII of the charter in 1911. (Stats. 1911, p. 2101.)

As presently advised there appears to us to be no other department of the city government which should be excepted from the rule that claims for damages for tortious acts or omissions of city officers and employees must first be presented to the city council as a prerequisite to suit. There are other departments such as the library department, the park department, and the playground and recreation department, which have independent revenues, either from the exaction of fees or charges for services or from a definite tax levy guaranteed by charter provision. But if the revenues of those departments were found to be inadequate to satisfy valid claims for tort arising in those departments, undoubtedly the council's power of appropriation for a specific municipal purpose, or of tax levy for such purpose, would have to be resorted to in order to satisfy such claims.

The rule of decision in this state in matters pertaining to the presentation of claims against the city for damages to persons and property on account of the negligent acts or omissions of officers and agents of the city has been in conformity with the rule laid down herein and brief reference will be made to the cases.

The cases of *Continental Ins. Co.* v. *City of Los Angeles, supra,* and *Huey* v. *City of Los Angeles, supra,* have been referred to and distinguished.

The next case is *Beeson* v. *City of Los Angeles,* 115 Cal. App. 122 [300 Pac. 993]. There a mother sued the city for damages on account of the death of her son who fell into a water hole in a storm drain and was drowned. It did not appear that she ever filed a claim or demand against the city or any of its boards or officers. It was held that the demurrer to her complaint was properly sustained on that ground. What was said in the opinion with reference to the necessity of filing a claim with the board of public works was unnecessary to the decision and cannot be deemed an authoritative pronouncement on the subject.

We next note the case of *Musto-Keenan Co.* v. *City of Los Angeles,* 139 Cal. App. 506 [34 Pac. (2d) 506], which was an action for damages for injuries to real property caused by work done by the board of public works pursuant to an ordinance of intention of the city council under the Boundary Line Act. (Stats. 1911, p. 1018.) The claim for damages was filed with the city council and duly rejected. On the appeal the city contended that the claim should have been presented to the board of public works. It was properly held after a review of the pertinent provisions of the charter that the city council and not the board of public works .was the municipal body to which the claim should be and was presented.

The next case is *Haigh* v. *City of Los Angeles,* 139 Cal. App. 595, 596 [34 Pac. (2d) 779], which was an action for damages to real property resulting from a street improvement constructed by the board of public works. On the question directly presented it was held that under no reasonable interpretation of the city charter could it be said that that board had "the power to incur the liability for damages such as is sued upon herein", and that the claim was properly filed with the city council.

Next we note the case of *Robertson* v. *City of Los Angeles,* 6 Cal. App. (2d) 289 [44 Pac. (2d) 461], an action for damages for personal injuries resulting from the operation by a police officer of an automobile owned by the city. The claim had been presented to and rejected by the city council. The trial court sustained an objection to the introduction of any evidence against it on the ground that the claim had not been presented to the police commission. The judgment in favor of the city was reversed on the ground that the claim was properly presented to the city council and that the presentation thereof to the police commission was unnecessary.

The last case decided by the District Court of Appeal and which has become final appears to be *Rogers* v. *City of Los Angeles,* 6 Cal. App. (2d) 294 [44 Pac. (2d) 465], an action for damages for personal injuries received by the plaintiff minor when a city-owned ambulance struck the automobile in which he was riding. The claim was filed with the city council and rejected. On the appeal the city contended that the claim should have been filed with the police surgeon who was in charge of the receiving hospital in connection with which the ambulance was operated. The contention was rejected and it was held that the claim was properly presented to the city council.

It will thus be seen that in every case decided by the District Courts of Appeal which involved an action for damages for injuries either to persons or property as a result of the tortious act or omission of an officer or agent of the city and in which the question was squarely presented and involved, it was held that the claim was properly presented to the city council, except when the claim arose in the department of water and power and in the harbor department.

In each of the cases decided by the District Courts of Appeal and above referred to, with the exception of the Continental Insurance Company case, a petition for hearing in this court was filed, and in each case the petition was denied. This fact is noted to indicate that this court must have been aware that an important question of procedure was involved and that a rule of decision was thereby being established which claimants against the city might feel reasonably safe in following. That such a rule of decision had theretofore been established in the District Courts of Appeal is stated

in the concurring opinion of Presiding Justice Stephens in the recent Robertson case, *supra.*

We conclude that the city council is the sole municipal authority to which the claim for damages involved herein should have been presented as a prerequisite to suit, and that since it appears that the claim was not so presented the action may not be maintained.

The judgment is affirmed.

Curtis, J., Seawell, J., Waste, C. J., Langdon, J., and Conrey, J., concurred.

THOMPSON, J., Concurring and Dissenting.—I concur in the judgment but dissent from that portion of the opinion construing the charter provisions. There are numerous authorities from other jurisdictions, as well as the cases of *Spencer* v. *City of Los Angeles,* 180 Cal. 103 [179 Pac. 163], *Continental Ins. Co.* v. *City of Los Angeles,* 92 Cal. App. 585 [268 Pac. 920], and *Crescent Wharf etc. Co.* v. *City of Los Angeles,* 207 Cal. 430 [278 Pac. 1028], which not only indicate that practically all large municipalities are protected by a rule designed for a purpose similar to that of section 363 of the charter, but also that the purpose of such a rule is twofold. It aids in the auditing of proper claims and advises the city of claims that it may make its investigation and prevent litigation where the circumstances warrant such action. *Continental Ins. Co.* v. *City of Los Angeles, supra,* especially points out the various purposes served by such a rule. Entirely in harmony with the foregoing are the cases of *Beeson* v. *City of Los Angeles,* 115 Cal. App. 122 [300 Pac. 993], and *Huey* v. *City of Los Angeles,* 137 Cal. App. 48 [29 Pac. (2d) 918]. In the Beeson case a child of the age of ten years, playing near a storm drain, fell into a water hole and was drowned. The demand was served upon the city council. The District Court of Appeal, after quoting applicable provisions of the charter, concluded that the demand should have been presented to the board of public works. In the Huey case a fifteen year old lad was accidentally killed on a drawbridge maintained by the city of Los Angeles. The court held, with respect to a demand presented to the city council, that it was "not proper or effective for any purpose" and

should have been presented to the board of harbor commissioners.

It is a fundamental rule of statutory construction that the provision under scrutiny should be given such construction as will fully attain its object and purpose. That can be done in the present case by construing the section as though it read that "such claim 'shall be presented to the board, officer or employee' whose act or omission has incurred the liability". It cannot be done by construing the section to mean that the city council is one of the boards included within the section, and this in the face of the fact that the city council was designedly dropped from the wording of the section. If, however, the section is construed as I think it should be, the claim would go to the board or department of the municipal government which should be conversant with the facts giving rise to the liability. Its report thereon, with approval or rejection, would then be presented (according to section 365 of the charter) to the controller, who, if the claim is not properly payable out of any fund, must, according to the same section, transmit the same to the council. The council, being advised, is in a position to allow or disallow as a result of the examination made. If, however, by judicial construction the process defined by the charter provisions is reversed, and the claim is allowed to be presented to the council, it must be referred to the board, then to the controller and back to the council for action. Not only that, but it must be conceded that claims must be presented to those departments having control of their own revenues. Why, then, should the rule not be uniform? The rule should be uniform, and it should coincide with the procedure outlined by other provisions of the charter.

We arrive at the same result by another line of reasoning. Let us suppose a case of street improvement where the owner has, under section 3 of part I of the Street Improvement Act, filed his protest to the proposed grade or modification of grade. Under such circumstances the damages to his property have presumably been estimated and included within the assessment for the improvements and are properly payable therefrom. Assuming that proper notice has been given and preliminary procedure observed, it cannot be doubted that the board of public works incurred the liability if damage was in fact done to the property. Manifestly such a claim, under

the charter provision and under the authority of *Spencer* v. *City of Los Angeles, supra,* would have to be presented to the board of public works, as would all other claims of a contractual nature incurred by it under its authority (conferred by charter) to contract for street improvements and its duty to keep the streets in repair. It will thus be seen that any other interpretation than the one herein would result in endless confusion.

I do not feel that the cases of *Musto-Keenan Co.* v. *City of Los Angeles,* 139 Cal. App. 506 [34 Pac. (2d) 506], and *Haigh* v. *City of Los Angeles,* 139 Cal. App. 595 [34 Pac. (2d) 779], should control the rule or be considered as sufficient to establish the rule that the city council is the proper body to which the demand should be presented. It cannot be said as a matter of law that the city council incurred the liability involved in those cases. A complete answer to this suggestion is found in *Eachus* v. *Los Angeles Consol. Elec. Ry. Co.,* 103 Cal. 614 [37 Pac. 750, 42 Am. St. Rep. 149], and *Bancroft* v. *City of San Diego,* 120 Cal. 432 [52 Pac. 712].

We ought, therefore, to avoid setting aside the procedure outlined in the charter by judicial construction and, in order to prevent confusion arising out of the nature of the claim to be presented, I am convinced that the claim should have been, in so far as the charter provisions are concerned, presented to the board of public works, that board being charged with the responsibility of keeping the streets in repair.

Rehearing denied.