[L. A. No. 10945. In Bank.—June 13, 1931.]

WILLIAM D. LAFFOON et al., Appellants, v. WILLIAM HENRY COLLINS et al., Defendants; OLGA REHFELD, Respondent.

Ira Hatch, Catherine A. McKenna and J. Irving McKenna for Appellants.

Homer N. Boardman for Respondent.

THE COURT.—This is an action to quiet title to certain real property in the city of Long Beach, California, instituted by plaintiffs as owners of the land as joint tenants. The complaint contains the usual averments of an action to quiet title and the action is based upon the alleged forfeiture of a contract of purchase of said land because of a default by the defendant in the payment of installments due upon the purchase price of said land under the terms of a contract originally entered into by plaintiffs, as vendors, and William H. Collins, and wife, as vendees, and subsequently assigned by the vendees to the defendant. A cross-complaint was filed in said action by the defendant to recover the amount of the purchase price paid to the plaintiffs by the defendant and by her assignor and to have the same adjudged a lien against the real property upon the theory that the contract had been mutually rescinded and abandoned. The judgment of the trial court was in favor of the defendant, and the plaintiffs have appealed.

The facts as disclosed by the record are as follows: In August, 1923, William D. Laffoon and his wife entered into a contract for the sale of the property to William H. Collins and wife for the sum of $7,850. The contract required the payment of $1400 upon the execution of the instrument, and the balance of the purchase price at the rate of $60 per month, payable the first day of each month thereafter, payments to first apply upon interest and the balance to apply upon the principal. It also required the vendees to pay all taxes and assessments which might subsequently become due on the property. Time was declared to be of the essence of the contract and the contract contained a provision that should the buyer fail to comply with the terms thereof, "then the seller shall be released from all obligations in law and in equity,

to convey said property, and the buyer shall forfeit all right thereto and to all moneys heretofore paid under this contract . . . '' The vendees went into immediate possession of the property thereafter collecting the rents due from the tenants. During 1925, at the solicitation of the vendees, the payment of $60 per month was reduced by the vendors to $50 per month. The contract was placed in a bank at Long Beach for collection, and the indorsement of the payments on the back of said contract indicate that the vendor did not insist upon the payments being made strictly on the first of each month and that, although in most instances the payments were made before the tenth of each month, in a few instances they were made later and on two or three occasions the payments were entirely omitted.

In July, 1927, Collins and wife assigned the contract to Olga Rehfeld, the defendant, by the following written instrument:

"July 25, 1927.

"For value received, I hereby assign, set over and transfer to Olga H. Rehfeld all my rights, title and interest to the within contract and to all the money paid thereon.

"WILLIAM H. COLLINS.
"NORMA M. COLLINS."

Collins informed the vendors that he was going to assign the contract and paid them $100 with the understanding that this covered the back payment of $50 for June and the $50 payment for July and brought the contract up to date.

On September 2, 1927, the August payment not having been made to the bank, Laffoon took the matter up with the defendant, Olga Rehfeld. She gave him a $50 check for the August payment and promised to send the check for the September payment as soon as she collected the rent of $40 from the tenants. Laffoon acquiesced in this arrangement and a few days later the check was received by the bank. On November 7, 1927, the October payment not having been paid, Laffoon withdrew the collection from the bank and turned it over to his attorney to bring an action for payments then due. On November 8, 1927, plaintiffs caused to be served on defendant a complaint filed in the municipal court of the city of Long Beach for the payment of the October and November installments and for back interest claimed to be due from February 1, 1927, amounting to

$345.79, and for such other payments as would become due before judgment in the action. On this same day, the defendant mailed to the bank a check for $50 to cover the October payments which was returned to her by the bank with a letter advising her that the collection had been withdrawn from the bank and that she should communicate with the attorney for the vendors, giving his name and address. Defendant, however, did not communicate with the attorney for the vendors and made no further payments upon the contract. Neither did she pay the taxes nor an assessment which became due upon the property. For some reason not apparent from the record a judgment of nonsuit was entered on January 4, 1928, in the action commenced by plaintiffs to collect the installments. On February 24, 1928, with no previous notice to defendant, the vendors commenced this action to quiet title, and on February 29, 1928, served notice on the tenants to thereafter pay the rents due to the attorneys for the plaintiffs. On April 7, 1928, the defendant gave notice to the tenants that as the vendors had rescinded the contract and she had acquiesced in said rescission they were at liberty to pay the rents to the vendors and thereafter the tenants did pay to the vendors the rents due. To the action to quiet title, defendant first filed an answer denying generally the allegations of plaintiffs' complaint and claiming an interest in the property which she alleged was paramount to the interest of the plaintiffs. Subsequently by leave of court she filed a cross-complaint setting up the defense that the actions of the plaintiffs constituted a rescission of the contract, which rescission had been acquiesced in and accepted by her.

The findings of the trial court were to the effect that the allegations of the defendant's cross-complaint were true and that the contract had been mutually rescinded, and judgment was rendered in favor of the defendant in the sum of $1,767.59; being the sum of $2,086.72, the amount paid by the vendees and the defendant upon the principal of said contract, less taxes and assessment paid by the plaintiffs in the sum of $119.13, and less the sum of $200 collected by defendant from rentals of said property. A lien was declared upon the property to secure the payment of the amount due, and a foreclosure of said lien was decreed.

In order to reach a conclusion that there had been a mutual rescission of the contract, it was necessary for the trial court in the instant case to find: (1) that the vendors by accepting payments after they were past due, had waived their right to declare a forfeiture for the failure by the vendees, or their assignee, to comply strictly with the terms of the contract; (2) that the right of forfeiture thus temporarily suspended had not been reinstated by the giving of proper notice by the vendors that future installments must be paid promptly or the contract would be forfeited; and (3) that acts of the vendors, inconsistent with the continuance of the existence of the contract, warranted an inference that the vendors intended to treat the contract as at an end and rescinded.

There is ample evidence in the record to justify the finding of the trial court that the vendors by the acceptance of past-due payments waived a right to declare a forfeiture of the contract. The indorsements entered by the bank upon the back of the contract show that almost from the inception of the contract the vendors granted to the vendees additional time in which to meet the payments. It also shows that on several occasions the payment of the installments was entirely omitted and not thereafter made up. In dealing with the assignee the August payment was over a month past due when Laffoon took the matter up with her, and at that time he acquiesced in her waiting until the rent had been collected from the tenants before she made the September payment. In view of the fact that the law does not favor forfeitures and evidence tending to show the waiver of a forfeiture will be looked upon with kindly eyes, we think there can be no question but that the trial court reached the correct conclusion upon this phase of the case. (25 Cal. Jur., p. 609; *Knarston* v. *Manhattan L. Ins. Co.*, 124 Cal. 74, 77 [56 Pac. 773].)

The vendors do not claim that a formal notice of their intention to insist upon a strict performance of the contract and to declare the contract forfeited if the terms were not strictly performed was ever served upon the vendees, or their assignees, but contend that the bringing of the action of November 8, 1927, in the municipal court of the city of Long Beach to collect the installments already due must

be held to be such a notice. In *Stevinson* v. *Joy*, 164 Cal. 279, 285 [128 Pac. 751, 753], the rule is stated as follows: "Where time is made of the essence of the contract for the payment of rent or other payments of money, and this covenant has been waived by the acceptance of rent or other moneys after they are due and with knowledge of the facts, such conduct will be regarded as creating 'such a temporary supension of the right of forfeiture as could only be restored by giving a definite and specific notice of an intention to enforce it'." The same rule is laid down in *Boone* v. *Templeman*, 158 Cal. 290 [139 Am. St. Rep. 126, 110 Pac. 947]. In *Hoppin* v. *Munsey*, 185 Cal. 678 [198 Pac. 398, 402], it was held that these two cases did not hold that such stipulation for forefeiture might not be restored and enforced by the vendor in any other manner than by giving a definite and specific notice of the intent to do so, but that if after such waiver, "the conduct of the vendor and vendee in subsequent dealings is such as to justify the inference that both parties understood that the conditions regarding forfeiture were to be treated as restored and were in force and that the vendee understood that he was then in default, the vendor may have the advantage of the forfeiture as completely as he may obtain it by definite notice to the vendee . . ." In the instant case, the suit in the municipal court was not of itself such a notice. The only possible notice. to the assignee was a conjecture, inferable from the mere bringing of the suit, as to the vendors' possible state of mind. The trial court evidently did not consider the bringing of this suit to collect the installments due upon the contract a sufficient specific and definite notice to justify the inference that both parties understood that the conditions regarding forfeiture were to be treated as restored and in full force. We think this was a reasonable conclusion by the trial court. We do not think the institution of the suit must necessarily be considered as notice to the assignee, and this being so, we do not feel warranted in holding as a matter of law that it was sufficient notice to reinstate the right of forfeiture previously waived and to justify the vendors in proceeding upon the theory that the right of forfeiture had been restored.

Stripped of its legal verbiage, the cross-complaint in effect sets up two separate and distinct acts of the vendors as acts of rescission: (1) the wrongful refusal in November to accept the October payment, and (2) the dispossession of the assignee by the service upon the tenants of written notice by the vendors of ownership and demand for future payments of the rents. ▉ We do not believe that the withdrawal of the collection from the bank by the vendors, no provision having been made in the contract that it should be placed in the bank for collection, and the return of the check to the sender by the bank accompanied by a letter explaining that the collection had been withdrawn and advising her to communicate with the attorney for the vendors, furnishing her with his name and address, can be interpreted as an act of rescission. The vendors were acting within their rights in withdrawing the collection from the bank and in the absence of any evidence that a tender to the attorney or to the vendors themselves was refused, such withdrawal cannot be held to be a wrongful refusal to accept payment.

▉ We are further of the opinion that the commencement of the suit to quiet title, although premature, was of itself a proper procedure, and that if the vendors had awaited the outcome of the quiet title action, or had even provided that during the pendency of the action the rents to which the assignee was entitled according to the understanding of the parties as evidenced by their conduct should be impounded to await the decision of the court, a claim of rescission by the vendors could not be successfully maintained by the defendant. ▉ The vendors, however, without awaiting the decision of the trial court, or without admitting any claim of the assignee to the rents, served notice upon the tenants to pay the rent then due or to become due to them. While this action on the part of the vendors could be considered as consistent with the theory that the vendors intended thereby to treat the contract as forfeited, in view of the fact that the right of forfeiture was temporarily suspended, it is also susceptible of the interpretation that the vendors intended to treat the contract as rescinded. At the very least, it is, under the circumstances of the instant case, an equivocal act. The trial court by its findings concluded that the vendors

intended by such act of dispossession to rescind the contract. We cannot say that the action of the vendors is not susceptible of this construction. It follows, therefore that the assignee of the vendee having accepted such dispossession as an act of rescission, the contract was in fact mutually rescinded, and the assignee is entitled to recover the purchase price.

The vendors further argue that the assignee at the most is only entitled to reimbursement of the actual amount paid by her as installments upon the contract. ■ Although the record does not show, the presumption is, the assignment being in writing, that the assignee gave to the vendees some consideration for the assignment to her of the contract. ■ By the assignment of the contract, heretofore set out, the vendees specifically assigned to the assignee all rights, title and interest to the contract, "and to all the money paid thereon". This entitled her, therefore, to recover in this action any money which the vendees would have been entitled to recover.

■ The vendors did not interpose the plea of the statute of limitations as a bar to the recovery by the assignee of the money paid previous to the two-year period preceding the institution of the action, and this plea, therefore, is not available to them.

The judgment is affirmed.