[Civ. No. 12135. Second Appellate District, Division One.—January 9, 1941.]

S. M. MILOVICH, Respondent, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants.

Ray L. Chesebro, City Attorney, S. B. Robinson, Chief Assistant City Attorney, Francis H. Lindley, Assistant City Attorney, and Alfred H. Driscoll, Deputy City Attorney, for Appellants.

Charles R. Holton, Paul G. McIver, and Burke, Hickson, Burke & Marshall for Respondent.

WHITE, J.—This is an appeal from a final judgment in favor of plaintiff and against the City of Los Angeles and

the Department of Water and Power of said city, rendered after trial by the court without a jury in an action for damages for an alleged breach on the part of said department of a construction contract awarded to plaintiff by the Board of Water and Power Commissioners of the City of Los Angeles. ■ Appellants also attempt to appeal from the order denying a motion for a new trial. There is no appeal from such an order in a civil action of this nature.

At the trial the parties stipulated to the following facts: That the contract in question was awarded respondent on February 25, 1937, and called for the construction of a project known as Sunland and Tujunga Water Supply Project; that by the terms thereof appellant department agreed to furnish respondent with certain materials necessary to said construction; that under the terms of the contract construction work was to be started within ten calendar days after mailing of written notice by appellant department to respondent to commence work and was to be completed within forty-five days from the date of mailing of such notice; that the department failed to deliver or furnish to respondent certain of the necessary materials until May 24, 1937; that the contract provided that respondent was not to sell, assign, hypothecate or remove equipment or materials necessary for the completion of the contract without the consent of the department; that a notice of respondent's claim for damages here sought was filed with the chief engineer and general manager of the Bureau of Water Works and Supply of respondent department on June 1, 1937, and that thereafter and on June 5, 1937, respondent received a letter from said chief engineer and general manager, as follows: "Your 'Notice of Claim for Damage' dated May 28, 1937, and accompanied by 'Itemized Statement of Damage,' was received by this Department on June 1, 1937. As we do not recognize that there is any basis for said claim or for the accompanying statement, we are compelled to reject the same, and each item thereof." The letter was signed by H. A. Van Norman, Chief Engineer and General Manager. The damages claimed by respondent were alleged to have been caused by appellant department's delay in delivering and furnishing the said materials.

The record reveals that the contract in question contained the following clause:

"30. CLAIMS FOR DAMAGES:

"It is agreed that if the Contractor shall claim compensation for any alleged damage by reason of the acts or omissions of the Board, or its agents, he shall, within ten (10) days after the sustaining of such damage, make a written statement to the chief engineer and general manager of the nature of the alleged damage. On or before the last day of the month succeeding that in which any such damage is claimed to have been sustained, the Contractor shall file with the chief engineer and general manager an itemized statement of the details and amount of such damage, and upon request of the chief engineer and general manager shall give him access to all books of account, receipts, vouchers, bills of lading and any other books or papers containing any evidence of the amount of such damages. Unless such statement shall be filed as thus required, his claim for compensation shall be forfeited and invalidated, and he shall not be entitled to payment on account of any such damage."

 Appellants first contend that respondent's cause of action for damages must fail for the reason that respondent did not present his claim for alleged damages to the Board of Water and Power Commissioners, in accordance with sections 363 and 376 of the Charter of the City of Los Angeles.

Section 363 of the charter reads as follows: "Every claim and demand against the city, except as provided in the preceding section, shall be first presented to and approved in writing by the board, officer or employee authorized by this charter to incur the expenditure or liability represented thereby. In all cases the date of such approval shall be given." Concededly, the claim of respondent does not come within the exception noted. Section 376, above referred to, provides that no suit shall be brought on any claim for money or damages against the City of Los Angeles, or any officer or board of the city, until a demand for the same has been presented, as provided, and rejected in whole or in part, and that all claims for damages against the city must be presented within six months after the occurrence from which the damages arose.

Respondent contends that the filing of his claim with the chief engineer, as above set forth, was a sufficient compliance with the charter provisions.

The point was raised at the trial when appellants objected to the introduction of any evidence in behalf of the plaintiff on the ground that the complaint failed to state a cause of action, in that it did not appear therefrom that a claim had been filed in accordance with section 376 of the charter, and that it further appeared from said complaint that a claim was not filed in accordance with said section. The objection was overruled. At the close of plaintiff's case defendants made a motion for a nonsuit, one of the grounds thereof being that plaintiff had failed to prove that a claim had been filed in accordance with said section of the charter. The motion was denied.

It was alleged in the complaint that the claim was served upon the Department of Water and Power of the City of Los Angeles, and it appears from the above-mentioned stipulation and the evidence that said claim was in fact presented to H. A. Van Norman, who was at the time chief engineer and general manager of the Bureau of Water Works and Supply of the Department of Water and Power.

In determining whether such claim was filed with the Department of Water and Power or its Board of Water and Power Commissioners, let us first have recourse to the contract here under consideration, which commences with the following language: "This agreement, made and entered into this 25th day of February, 1937, by and between the Department of Water and Power of the City of Los Angeles, a municipal corporation, First Party, sometimes hereinafter called the Department, and S. M. Milovich, an individual, Second Party, sometimes hereinafter called the contractor." In this connection, it should be noted that in the foregoing preamble no reference whatever is made to the Board of Water and Power Commissioners as being one of the contracting parties, but the sole reference is to the "Department of Water and Power of the City of Los Angeles". Let us now turn to the phraseology embodied in the execution clause of the contract, where we find the following: "Department of Water and Power of the City of Los Angeles, by Board of Water and Power Commissioners of the City of Los Angeles, by John R. Haynes, President, and Jas. P. Vroman, Secretary. S. M. Milovich, by S. M. Milovich."

Thus we see that through the execution of the contract by the "Board" in the name of the "Department", the former recognized that the proper and legal name of the

contracting party was the Department of Water and Power of the City of Los Angeles. That the terms "Board" and "Department" are synonymous for the purpose of filing a claim was recognized in *Douglass* v. *City of Los Angeles,* 5 Cal. (2d) 123, 134 [53 Pac. (2d) 353], where in the following language the words "Board" and "Department" are used interchangeably:

"The *department* of water and power is conducted by the city in its proprietary capacity. This department has control of its own revenues and disbursements and in the ordinary course of its management would not be dependent on the city council for an appropriation to meet a demand for damages for the negligence of its officers or employees. The liability of the city for such negligence, through the operations of such a department, was established long before the enactment of the statute of 1923. (*Davoust* v. *City of Alameda,* 149 Cal. 69 [84 Pac. 760, 9 Ann. Cas. 847, 5 L. R. A. (N. S.) 536].) And the necessity of presenting a claim to that *board* as a prerequisite to suit was properly declared in *Continental Ins. Co.* v. *City of Los Angeles,* 92 Cal. App. 585 [268 Pac. 920]." (Italics added.)

As heretofore pointed out, the contract here in question provided that in the event any claim for damages be asserted, the contractor shall "within ten (10) days after the sustaining of such damage, make a written statement to the Chief Engineer and General Manager of the nature of the alleged damage", and "on or before the last day of the month succeeding that in which any such damage is claimed to have been sustained, the Contractor shall file with the Chief Engineer and General Manager an itemized statement of the details and amount of such damage". In that connection the court found:

"That it is true that on June 1, 1937, plaintiff filed with said defendant Department and the chief engineer and general manager thereof, a written, itemized statement of the details and amount of said damage and presented a claim and demand therefor in writing to said defendant Department and that a true and correct copy thereof is attached to the complaint herein and marked Plaintiff's Exhibit A and Plaintiff's Exhibit B.

"That it is true that on June 5, 1937, the defendant Department rejected said demand in whole and disallowed and refused to pay the same or any part thereof."

This finding was justified by evidence which included the terms of the contract hereinbefore narrated together with the admitted fact that a claim was filed with the chief engineer and general manager of the Bureau of Water Works and Supply of the Department of Water and Power, as well as the answer thereto, which is significant by reason of its contents. The reply letter reads as follows:

"H. A. VAN NORMAN
Chief Engineer and
General Manager
of Water Works

DEPARTMENT
OF
WATER AND POWER
City of Los Angeles
BUREAU OF WATER WORKS AND SUPPLY

207 S. Broadway
LOS ANGELES
MIchigan 4211

June 4, 1937.

RE: CLAIM FOR DAMAGE
PWA Docket No. Calif. 1929-80-R
Sunland-Tujunga Water Supply Proj.

"Mr. S. M. Milovich
 208 Cochrum Building
 Montebello, California.
Dear Sir:
 Your 'Notice of Claim for Damage' dated May 28, 1937 and accompanied by 'Itemized Statement of Damage,' was received by this Department on June 1, 1937. As we do not recognize that there is any basis for said claim or for the accompanying statement, we are compelled to reject the same, and each item thereof.

 Yours very truly,
 (Signed) H. A. VAN NORMAN
 Chief Engineer and General Manager."

By the foregoing writing the claimant was advised that his claim was rejected, not by the chief engineer and general manager, but by "we", which certainly meant by the "Department" of Water and Power, upon whose letterhead the notice of rejection was written. Viewed from any standpoint of fairness, equity and justice, the respondent herein complied substantially with the provisions of section 363 of the Los Angeles City Charter. When we contemplate the terms of the contract which directed that the claim be transmitted by and through the chief engineer and general manager of the contracting "Department", coupled with

compliance therewith by respondent, and the letter of rejection informing the claimant of adverse action upon his claim by such "Department", we are driven irresistibly to the inference and conclusion, as declared in the findings of the trial court, that the Board of Water and Power Commissioners, who signed the contract for and in behalf of the Department of Water and Power, acted upon and rejected respondent's claim.

As pointed out in *Sandstoe* v. *Atchison, T. & S. F. Ry. Co.,* 28 Cal. App. (2d) 215 at page 223 [82 Pac. (2d) 216], the purpose of filing a claim, as provided in the charter, is to enable public officials to make proper investigation concerning the merits of the claim and, if in their opinion settlement of such claim be proper, to proceed to such disposition without the expense of a lawsuit. In the same case we find the following expressive language: "In the absence of an intention to mislead, a substantial compliance with the charter requirement is sufficient. In *Uttley* v. *City af Santa Ana,* 136 Cal. App. 23 [28 Pac. (2d) 377], the court quoted with approval from *Wagner* v. *City of Seattle,* 84 Wash. 275 [146 Pac. 621, Ann. Cas. 1916E, 720] : 'When, therefore, there is no evident intention to mislead, but a *bona fide* attempt to comply with the law, the notice is sufficient in the absence of any evidence that it did in fact mislead'. The court further stated: 'The general rule with respect to this sort of notice of claim is that a substantial compliance with the provisions of the statute is sufficient. (19 R. C. L. 1044.)' . . . "

By reason of the foregoing, we are thoroughly impressed that respondent herein did absolutely in effect present his claim to the proper board when he filed it with the administrative officer of such board designated in the contract and received notice of its rejection in the manner and form aforesaid. There was certainly no manifestation of any intention or desire to mislead, nor is there any evidence that appellants were in fact misled; and there was, therefore, a substantial compliance with the charter requirements.

As a further ground for reversal of the judgment herein, appellants urge that respondent failed to file the claim for damages provided for in paragraph 30 of the agreement until June 1st, and is thereby precluded from recovering any damages accruing prior to a ten-day period immediately preceding June 1st. The first intimation that appellants re-

lied upon nonconformance by respondent with the said provisions of paragraph 30 in order to defeat the latter's cause of action came at the commencement of the trial, when objection was made to the introduction of any evidence pertaining to any damages occurring prior to May 20th, on the ground that no claim as provided for in paragraph 30 of the agreement had been filed until June 1st. Objection also was made to the introduction of the filed notice as constituting any evidence of a notice filed pertaining to items of damage which accrued prior to a ten-day period immediately preceding the filing of such claim. It is argued by appellants that since the evidence showed that a breach occurred April 1st when there was a failure by the department to deliver steel pipe, that thereafter and on each succeeding day, until May 24th, successive breaches occurred, because delivery was not made by the department until the last-named date. Therefore, urge appellants, it was necessary for respondent to file a statement within ten days after each daily breach occurred and to file an itemized statement of the details and amount of such damages on or before the last day of the month succeeding that in which such damage is claimed to have been sustained. Paragraph 30 of the agreement provides that for noncompliance with the requirement to file a claim as aforesaid, such "claim for compensation shall be forfeited and invalidated, and he shall not be entitled to payment on account of any such damage".

 Appellants not having filed either a general or special demurrer, and not having set up as an affirmative defense the alleged failure of the respondent to comply with paragraph 30 of the agreement in connection with the filing of claims, we are compelled to construe respondent's pleading liberally and to indulge in every reasonable intendment in its favor. (*Gallagher* v. *California Pacific T. & T. Co.,* 13 Cal. App. (2d) 482, 484 [57 Pac. (2d) 195].) Further, paragraph 30 of the agreement, providing as it does for a forfeiture of any damages for noncompliance, must be strictly construed against appellants, for whose benefit such clause was inserted in the contract. (Civ. Code, sec. 1442; *Taylor* v. *Hamilton,* 194 Cal. 768 [230 Pac. 656] ; *Skookum Oil Co.* v. *Thomas,* 162 Cal. 539, 547 [123 Pac. 363].) Neither law nor equity looks with favor upon forfeitures. and neither will enforce them unless the right thereto is

clear and certain. Unless no other interpretation is reasonably possible, a contract should not be construed so as to effect or provide for a forfeiture. (*Laffoon* v. *Collins*, 212 Cal. 750 [300 Pac. 808]; *Hansen* v. *D'Artenay*, 121 Cal. App. 746 [9 Pac. (2d) 889].) Let us therefore examine the facts of this case in connection with the presentation of respondent's claim to ascertain therefrom whether thereunder a forfeiture was the unmistakable intention of the agreement. If we can reasonably interpret the agreement so as to avoid a forfeiture in view of respondent's conduct, it is our duty so to do. (*Quatman* v. *McCray*, 128 Cal. 285 [60 Pac. 855].)

Briefly, the pertinent language of section 30 of the contract provides that the contractor shall within ten days after sustaining damage make a written statement to the chief engineer and general manager of the nature of the alleged damage, and further, that on or before the last· day of the month succeeding that in which any such damage is claimed to have been sustained, the contractor shall file with the chief engineer and general manager an itemized statement of the details and amount of such damages. Then follows this language: "Unless such statement shall be filed as thus required, his claim for compensation shall be forfeited and invalidated, and he shall not be entitled to payment on account of any such damage." The language decreeing a forfeiture is in the singular and does not say that unless both statements are filed a forfeiture will occur, but plainly limits the penalty to a failure to file the itemized statement on or before the last day of the month succeeding that in which any damage is claimed to have been sustained. The trial court found upon competent evidence that by reason of the failure of appellant department to deliver the steel pipe and the steel pipe bends, respondent was prevented from performing work upon that portion of the contract dealing therewith from April 1, 1937, to May 24, 1937, and it was further found that on June 1, 1937, respondent filed with the chief engineer and general manager a written, itemized statement of the details and amount of said damage and presented a claim and demand therefor in writing to appellant department. In view of our holding that forfeiture and invalidation of the claim for damages is predicated upon paragraph 30 of the agreement only on the failure to file the itemized

statement, we turn now to a determination of whether such itemized statement was filed on or before the last day of the month succeeding the month in which the damage is claimed to have been sustained. Needless to say, so far as the damages sustained during the month of May are concerned, it is clear that respondent complied with section 30, since he filed his itemized statement on June 1st. With reference to the claim for damages sustained during the month of April, and in connection with which it was required that such itemized statement be filed on or before the last day of the succeeding month, viz., the month of May, if respondent was to avoid a forfeiture and invalidation of his claim for April damages, it is significant that the 30th day of May, 1937, was Decoration Day, a holiday within the meaning of our law. (Civ. Code, sec. 7; Pol. Code, sec. 10.) Further, the 30th day of May, 1937, fell upon a Sunday, and therefore the Monday following, or May 31st, was a holiday. (Civ. Code, sec. 7; Pol. Code, secs. 10 and 11.) Since, under section 11 of the Civil Code, ''whenever any act of a secular nature, other than a work of necessity or mercy, is appointed by law or contract to be performed upon a particular day, which day falls upon a holiday, it may be performed upon the next business day, with the same effect as if it had been performed upon the day appointed'', it follows that the filing of the itemized statement here under consideration for damages accruing during the month of April, which was required to be filed upon May 31, 1937, could be filed upon the next business day, or June 1st, with the same effect as if it had been filed May 31st. Since the only condition by which respondent could have forfeited and invalidated his claim would be by his failure to file the itemized statement of the details of such damage on or before the last day of the month succeeding the occurrence of such damage, and since he did file such statement on June 1st and such filing was tantamount to a filing upon the last day of May, it follows that such filing was timely. As no forfeiture or invalidation of respondent's claim was worked by his failure to make a written statement of the nature of the alleged damage within ten days of such damage, the court was justified in concluding that respondent complied with the requirements of paragraph 30 of the agreement when he filed his itemized statement on June 1, 1937.

■ We come now to a consideration of appellants' contention that extensions of time for completion of the contract is the sole remedy of respondent, and that by reason of the extensions of time granted by the department to the contractor within which to complete the contract, the latter is not entitled to recover damages for any delay in carrying out the contract when such delay was occasioned by the acts of negligence of the appellants. In this connection the trial court found "that it is not true that defendant department granted an extension of time to plaintiff to complete said contract, nor is it true that plaintiff accepted any such extension of time from defendants". We find ourselves in accord with appellants' contention that the foregoing finding is not supported by the evidence. The testimony not only conclusively shows that such extensions were granted, but that on June 28, 1937, respondent himself requested in writing a thirty-day extension. Respondent's claim that such extensions could only be granted and were granted by the Public Works Administration of the Federal Government, is without merit. The fact that appellant department received from the Federal PWA certain portions of the cost of the project covered by the contract between the parties hereto in no way affects the relationship between respondent and appellant department. Whether appellant department received the approval of the Federal agency in granting extensions was of no concern to respondent. He was entitled under the terms of his contract to the extensions from the department, and any detriment suffered by the latter in the way of refusal of the Federal PWA to furnish additional money if extensions were granted, could not affect respondent. His contract was with the appellant department, and as to him in his contractual relation with the other parties to the contract, the PWA was a total stranger.

■ Nevertheless, we are of the opinion that a reversal of the judgment is not required or warranted because of the failure of the evidence to support the challenged finding. This because whether extensions were requested or granted is not determinative of respondent's right to recover damages, if any were sustained by reason of appellant department's acts or neglect. If our view in this regard be sound, then a finding by the court that the extensions were requested and granted would not aid appellants. We are not impressed by the latter's argument that when delays

occurred in said work through the acts and neglect of appellant department, respondent was restricted to the sole remedy of securing an extension of time within which to complete the project. Paragraph 8 of the contract here under consideration provides: ''If the Second Party should neglect to prosecute the work properly or fail to perform any provisions of this contract, the First Party, after three days' written notice to the Second Party, may, without prejudice to any other remedy he may have, make good such deficiencies and may deduct the cost thereof from the payment then or thereafter due the Second Party.'' Thus we see that should the contractor ''fail to perform any provisions of this contract'', which, we take it, includes a failure to complete the work within the specified time, the department was authorized to take over the contract and deduct the cost of making ''good such deficiencies'' from the contract price. It seems to us that it was in connection with such prerogatives given to appellant department that paragraph 11 was inserted in the agreement, reading as follows:

''The time during which said Second Party is delayed in said work by the acts or neglect of said First Party, or its employees or those under it by contract or otherwise, or by changes ordered in the work, or by strikes, lockouts, fire, unusual delay in transportation, unavoidable casualties or any causes beyond the Second Party's control, or by delay authorized by the First Party, or by any cause which the Chief Engineer and General Manager shall decide to justify the delay, then the time of completion shall be extended for such reasonable time as the Chief Engineer and General Manager may decide.

''This article does not exclude the recovery of damages for delay by either party under other provisions in the contract documents.''

It would outrage every semblance of justice, fairness and equity to assume that under the foregoing paragraph 11 respondent should be foreclosed from recovering damage sustained by him when through the failure of appellant department to furnish pipe from April 1st to May 24th respondent was compelled to keep his machinery on the ground in idleness. The court found upon competent and substantial evidence that during the last-named period respondent had his machinery on the ground; that such machinery was necessary to perform the contract; that appellant department knew

at all times that such machinery was upon the ground and was necessary to be used in laying pipe which appellant department neglected to deliver. It was further found by the court that it was not practicable for respondent to remove any of this equipment from said project during the period from April 1st to May 24th, because it was required of respondent contractor that he have such machinery ready and available on the ground in order to be prepared to commence the performance of that portion of his contract which was delayed by reason of appellant department's neglect to provide pipe in accordance with its agreement. To uphold appellants' contention in this regard would be to give to the language of the contract a construction at variance with equitable principles and to clothe the appellant department with an unconscionable advantage over the contractor, by permitting the former to make amends for its contractual derelictions, delays and neglect by simply extending the time within which the contract could be completed regardless of the financial loss accruing to the contractor. This we cannot do in the absence of a plain, unequivocal intention on the part of the contracting parties, as evidenced by the language of the contract, to restrict the remedy of the contractor to that of obtaining an extension of time. We have given careful consideration to the case of *Hansen* v. *Covell,* 218 Cal. 622 [24 Pac. (2d) 772, 89 A. L. R. 670], and other cases cited by appellants, but in none of these cases was the contractor required to maintain machinery and apparatus in idleness upon the ground awaiting performance of the agreement by the other party to the contract, such as was required by the department in the instant case.

Finally, appellants urge that they were entitled to have the sum of $1200 deducted from the damages, by reason of a benefit in that amount allegedly received by respondent because of appellant department's delay and neglect in the matter of delivery of pipe. In this connection appellants assert that under the contract all work was to be completed within 45 days, and that if the steel pipe had been delivered by appellant department on April 1st as provided in the agreement, the contractor would have had to lay the steel pipe and construct the infiltration gallery at the same time, whereas, due to appellant department's delay in furnishing the steel pipe, the contractor was able to complete the construction of the infiltration gallery before he

began the laying of the steel pipe about June 1st. From the foregoing appellants reason that the evidence establishes the fact that if the two parts of the work were to be completed concurrently, the respondent would have to rent another crane, which would have cost $20 per day, or a total of $1200 for a period of sixty days. Not having to rent such other crane because of appellant department's delay, it is claimed that the saving of the $1200 rental should enure to the benefit of appellants. In this contention appellants cannot be sustained, for the reason that the record is barren of any evidence to show that $20 per day or any other sum would be the reasonable value of a crane which respondent would have had to rent if the gallery infiltration and pipe laying actually had been done contemporaneously. True, there is contained in the record a stipulation as to the reasonable rental value of a crane, but that was the crane used by the contractor, and no reference is made to any other crane which he might have been required, under different circumstances, to utilize. Neither does the record contain a basis upon which to compute, as appellants do, that such crane, if used, would be in service for sixty days. This contention should have been urged and established by proof in the trial court and not left to the caprice and vagaries of speculation in the briefs on appeal.

The action of the trial court in denying the motion for a new trial having been considered in a review of the appeal from the judgment, the attempted appeal from the order denying the motion for a new trial is dismissed.

We find no prejudicial error in the record, and accordingly, for the reasons herein stated, the judgment is affirmed.

York, P. J., concurred.

DORAN J., Dissenting.—I dissent.

In order to decide the question here presented, it is apparent from the provisions of section 363 of the city charter that it will first be necessary to determine who was authorized by the charter to incur the expenditure or liability represented by the claim. Further, if it should be determined that such authority lies only with the Board of Water and Power Commissioners itself, it then becomes necessary to decide whether a presentation of a claim to a subordinate of said board, such as the Chief Engineer of the Bureau of

Water Works and Supply of the Department of Water and Power, is tantamount to presenting the claim to the board and a sufficient compliance with the charter.

The City Charter of Los Angeles provides that the Department of Water and Power shall be under the control and management of a board of five commissioners known as the Board of Water and Power Commissioners (secs. 70, 71, Los Angeles City Charter). The charter permits the said board in its discretion to divide the work of the department into two bureaus, a Bureau of Water Works and Supply and a Bureau of Power and Light, and the chief engineer of the respective bureaus is general manager thereof. (Sec. 220 (4), *idem.*) Without considering the pertinent charter provisions in detail, it is clear that such a general manager is an administrative officer subordinate to the board and subject to its instructions and that his authority to expend funds extends only to such funds as have been appropriated by the board. (Secs. 80 (1), (3), 82, 83, *idem.*)

Concededly, the Board of Water and Power Commissioners had made no appropriation to cover a claim such as that made by respondent, and it must be concluded therefore that the general manager of the Bureau of Water Works and Supply had no authority to incur the expenditure represented by said claim. In accordance with the provisions of the charter, such authority is vested solely in the Board of Water and Power Commissioners. Nor can it be said that the general manager of said bureau had authority to incur the liability under the claim here in question. The claim here is for damages arising out of an alleged breach of a contract. In the light of the provisions of the city charter, manifestly the general manager of a department is not given authority at will to disregard or breach a contract entered into by the department. Under the circumstances, to properly found respondent's cause of action his claim must first have been presented to said board, as the only body with authority under the charter to incur the expenditure or liability.

Compliance with the provisions of the city charter with respect to the filing of claims against the city has been held to be mandatory and to constitute a condition precedent to the commencement of any action for damages against the city. (See *Continental Ins. Co.* v. *City of Los Angeles,* 92 Cal. App. 585 [268 Pac. 920]; *Spencer* v. *City of Los Angeles,* 180 Cal. 103 [179 Pac. 163]; *Crescent Wharf & Whse.*

*Co.* v. *City of Los Angeles,* 207 Cal. 430 [278 Pac. 1028]; *Geimann* v. *Board of Police Commrs.,* 158 Cal. 748 [112 Pac. 553]; *Beeson* v. *City of Los Angeles,* 115 Cal. App. 122 [300 Pac. 993].) However, substantial compliance with said provisions is deemed sufficient, in the absence of an intention to mislead. (*Sandstoe* v. *Atchison, T. & S. F. Ry. Co.,* 28 Cal. App. (2d) 215, 223 [82 Pac. (2d) 216]; *Uttley* v. *City of Santa Ana,* 136 Cal. App. 23 [28 Pac. (2d) 377].) In the instant case there was clearly no intention on the part of respondent to mislead.

There remains, therefore, the question as to whether a presentation of the claim to the chief engineer and general manager of the Bureau of Water Works and Supply may be held to be the equivalent of presentation of said claim to the Board of Water and Power Commissioners and a substantial compliance with the charter provisions.

It is not disputed that respondent's work under his contract was under the supervision of the Bureau of Water Works and Supply; and the chief engineer of said bureau was the chief executive in charge. Moreover, as seen above, the contract provided that any such claim must be filed with the "Chief Engineer and General Manager", and respondent's claim states that it is made pursuant to section 30, chapter IV of the contract, the pertinent wording of the claim being as follows: "Notice is hereby given, that the undersigned Contractor on the above named work or project, pursuant to section 30, chapter IV of the contract and specifications hereby makes claim for compensation for damages by reason of the acts or omissions of the Board of Water and Power Commissioners of the Department of Water and Power of the City of Los Angeles, and its agents, in failing to comply with the terms and conditions of said contract and specifications on the part of said Board and its agents to be performed." The section of the contract referred to has already been quoted in full in the majority opinion. The claim does not state that it is made pursuant to the charter provisions, although of course this would not be necessary if the claim were in fact properly presented.

It does not appear from the record that the claim was ever transmitted to or considered by the Board of Water and Power Commissioners. The reply to respondent's claim was made by the chief engineer of the Bureau of Water Works and Supply and there is no indication therein that any ac-

tion was taken on the claim by the board or that it had ever been presented to the board for its consideration. The only reasonable inference to be drawn from the record is that the claim was considered and acted upon by said chief engineer and general manager as the chief administrative officer of that particular bureau of the Department of Water and Power.

The letter written by the chief engineer notifying respondent of the rejection of his claim, set forth in full in the opinion of the majority of the court, furnishes no foundation whatsoever for any inference that the claim was acted upon and rejected by the Board of Water and Power Commissioners. The use of the word "we" therein can only be taken as referring to the department of which the said chief engineer was an administrative head. The distinction between the Department of Water and Power and its governing board is hereinafter pointed out. To infer that the board had acted on and rejected the claim herein is to engage first in a presumption that the claim had been presented to the board by the chief engineer, as there is no evidence that the claim was so presented. Such an inference would therefore be based upon a presumption and not upon a fact legally proved or upon a deduction properly drawn from that fact. Moreover, a presumption that the claim was presented to the board is not warranted by the facts of this case. Whatever view is taken of the facts herein, there is no basis for a legal conclusion that the Board of Water and Power Commissioners received and acted upon respondent's claim.

It may also be inferred that in filing the claim it was respondent's intention to comply with the terms of the contract and that the charter provisions were not considered.

Respondent argues that there is no appreciable or controlling legal difference between the Board of Water and Power Commissioners and the Department of Water and Power so far as the requirements of sections 363 and 376 of the city charter are concerned, and asserts that the article of the charter dealing with the Department of Water and Power uses the term "board" and the term "department" interchangeably. In my judgment the argument lacks substance in view of the charter provisions above referred to, which clearly indicate that the "board" is the Board of Water and

Power Commissioners, consisting of five persons, which forms
the governing body of the Department of Water and Power,
and which generally bears the same relation to the depart-
ment as the board of directors bears to a private corporation.
When the charter speaks of the ''board'' it must be taken to
mean the governing body of the department as distinct from
any subordinate officer or employee, and the term ''board''
as used in section 363 of the charter must be taken in the
same sense.

The majority opinion herein states that the terms ''board''
and ''department'' have been recognized as synonymous in
*Douglass* v. *City of Los Angeles*, 5 Cal. (2d) 123, 124 [53
Pac. (2d) 353], for the purpose of filing claims. In my
judgment a careful reading of the case reveals no basis for
such a conclusion. The opinion of the Supreme Court therein
indicates throughout that the court understood the term
''board'' to refer to the governing body of a department.
Moreover, the decision did not involve the question here pre-
sented. At page 129, the Supreme Court there stated:
'' . . . the discussion must necessarily exclude from con-
sideration all claim for the expenditure of funds in the sev-
eral departments of the city government over which the re-
spective governing or administrative officers or boards have
charge and control, with specific authority in the charter
to order the expenditure thereof''. Later in the said opin-
ion, at pages 134 and 135, the Supreme Court cites two cases
holding the filing of a claim with the board as the govern-
ing body a prerequisite to the commencement of a suit against
the city. One of the cases so cited, *Continental Insurance
Co.* v. *Los Angeles* (*supra*), is clearly in point in the instant
case and should control the decision of this court. At page
592, the court in the Continental case said: ''So that it is
apparent that the general plan or scheme and intention of
the framers of the charter and of the legislature was first
to provide for the presentation of a demand as a necessary
prerequisite to the maintenance of a suit to the end that the
city should always be given an opportunity to pay before
being subjected to litigation and second, as its business and
administrative responsibility increased to create new boards
and commissions with the object and to the end of relieving
the council of many of its responsibilities and enabling it
to function, more especially as a distinctive legislative body.
After the adoption of the charter as new boards and com-

missions were created, and broad powers and duties, and independent functions were given to them, so, consistently, was the charter amended from time to time to make its provisions harmonize with this main purpose, and in this connection to provide that before paying any demand it must first be presented to and approved by the board or commission authorized by the charter to incur the expenditure or liability represented. The entire plan and scheme of approving and auditing every demand disclosed by the provisions of the charter . . . makes it apparent that the prerequisite presentation of a demand in accordance with the provisions of the charter requires that that demand be first presented to the board or commission without whose approval the council may not order it paid, . . . The demand should first be presented to the board, so that if it approved the demand it could recommend the 'expenditure'."

The last sentence of the above quotation clearly reveals the reason for the charter provisions here considered and the necessity therefor. Under the charter, the board alone has the authority to authorize the expenditure. Therefore, the only method of avoiding unnecessary suits is for the board to consider the claim and act upon it.

It is significant that the paragraph quoted in the majority opinion from the Douglass case, *supra,* is immediately followed (at p. 134) by this paragraph:

"Likewise the harbor department, established by charter amendment in 1911 (Stats. 1911, p. 2125), may be classed as a department *under the management of an independent board* with power to fix the charges for its own revenue and having control of the disbursement thereof. In the ordinary course of the business of that department it is assumed that its own funds would be sufficient to satisfy any claims for damages arising in that department. In *Huey* v. *City of Los Angeles,* 137 Cal. App. 48 [29 Pac. (2d) 918], suit was brought against the city on account of the death of a boy who was killed on a drawbridge, the maintenance and operation of which was under the charge and control of the board of harbor commissioners. It was held that an action was not maintainable against the city in the absence of a showing that a claim had been filed with that *board.*" (Italics added.)

The apparent reason for the charter provisions requiring the filing or presentation of a claim before suit compels a

conclusion that the claim in the instant case was not properly filed or presented. In the Douglass case, *supra,* it was said, at page 133: ''The theory of the law requiring the filing of a claim before suit contemplates that if the claim be just and proper the municipal officer or body with which the claim is filed shall have power to approve payment without suit and make such approved claim a valid claim against the city without the necessity of the claimant reducing the demand to judgment. If the board has no such authority the filing of a claim with it would be futile and would thus fail to bring notice of the claim to the municipal authority having power to order the claim paid, without suit.''

It has already been pointed out that the chief engineer and general manager of the Bureau of Water Works and Supply had no authority to approve payment of the claim without suit, but from all that appears in the record, he was the only officer who passed upon it. Obviously, in such a situation the filing of the claim was futile, as far as compliance with the charter was concerned, in that it failed to bring notice of the claim to the municipal authority having power to order the claim paid, namely, the Board of Water and Power Commissioners.

Moreover, it should be pointed out that the charter requires something more than mere formal notice. The board, officer or employee with the authority to do so must *act* upon the claim and accept or reject it. Section 363, above referred to, requires every claim to be first presented *and approved in writing* by the board, etc., and section 376 provides that no suit shall be brought thereon until so presented *and rejected* in whole or in part. The charter thus provides for a *positive act* on the part of the proper authority before a suit may be commenced. Respondent's claim here lacked the requisite rejection by the proper authority.

It should also be pointed out that the pertinent provisions of the city charter make no distinction between claims founded in tort and those in contract. The requirement of presentation and rejection apply clearly to both.

If it be assumed that the Board of Water and Power Commissioners in the instant case intended by the provisions of the contract above mentioned to delegate to the chief engineer of the Bureau of Water Works and Supply the duty of receiving and considering claims for damages under said contract, such an attempt on the part of the board would

be in excess of the powers granted it by the charter, of no effect and void, since the charter clearly does not permit it, and the board is without power to waive the statutory provisions of the charter. (*Spencer* v. *City of Calipatria,* 9 Cal. App. (2d) 267 [49 Pac. (2d) 320]; *Chapman* v. *City of Fullerton,* 90 Cal. App. 463, 470 [265 Pac. 1035].) There could of course be no objection to a provision in the contract which required some condition to be met in addition to those required by the charter, but the provisions of the charter cannot be dispensed with.

Nor can it be asserted that presentation of a claim to the general manager of said bureau is analogous to presentation of a claim to the city clerk, in cases which have held that such procedure constitutes presentation to the city council. (See *Lynch* v. *City of Los Angeles,* 11 Cal. App. (2d) 633 [54 Pac. (2d) 488]; *Douglass* v. *City of Los Angeles, supra.*) The relation of the general manager to the board of commissioners is not the same as the relation of the city clerk to the council. The city clerk acts as secretary to the council. (Sec. 44 (3), Los Angeles City Charter.) The charter specifically provides for a secretary to a board of commissioners, a position wholly distinct and separate from that of a general manager (see secs. 75 and 80 (2) of said charter); and the duties of a general manager are in no way analogous to those of the city clerk.

Viewed as an attempt to comply with the charter provisions, the filing of the claim herein with the chief engineer of the Bureau of Water Works and Supply falls short of a substantial compliance as approved in the cases of *Sandstoe* v. *A., T. & S. F. Ry. Co.,* and *Uttley* v. *City of Santa Ana,* both *supra.* In the Sandstoe case the charter provision in question required that the claim be first filed with the city controller and after rejection by that official, then with the legislative body of the city. The plaintiff there filed her claim with both simultaneously, which was held to be a substantial compliance since the city was given a full opportunity to investigate the merits of the claim and was not misled or prejudiced by plaintiff in filing her claim as she did. In the Uttley case the sole question was whether the name and address of the claimant's attorney endorsed upon the claim was a substantial compliance with a charter provision requiring the name and address of the claimant to appear on the claim. In both these cases the body in au-

thority had actually received the claim. In the instant case it appears that the proper authority never received the claim at all, and that the person who did receive the claim was not in such a position that the proper authority might be deemed to have received and acted upon it.

To sum up, then, the situation here presented is one wherein a contract with the Department of Water and Power required a different method of presenting a claim than that provided by the city charter, and a claim was presented to the general manager of that department pursuant to the provisions of said contract, and it appears that no attempt was made to comply with the provisions of the charter as to presentation of the claim and that said claim was never presented to, or acted upon by the Board of Water and Power Commissioners, which was the board with authority under the charter to incur the expenditure or liability represented by said claim, but the claim was considered and acted upon instead by the general manager of the department. In such a case, and under such circumstances, there has not been a substantial compliance with sections 363 and 376 of the city charter, above referred to, and the claim therefore was not properly presented to and rejected by the proper authority before the commencement of suit. Respondent has consequently failed to satisfy the condition prerequisite to his cause of action herein; and this court should avoid setting aside the procedure outlined in the charter by judicial construction. (See the opinion of Mr. Justice Thompson in the Douglass case, *supra,* at page 140.)

As already pointed out, the Board of Water and Power Commissioners cannot alter by contract the procedure prescribed by the charter. Nor is it the province of the courts to alter such procedure, however harsh the effect may be in a particular case. A purported attempt to comply with the charter, if legally insufficient, acquires no added sufficiency by reason of the good faith related to the notice. Good faith has never been regarded by the law as a substitute for an indispensable legal requirement. It is argued in the prevailing opinion that: "Viewed from any standpoint of fairness, equity and justice, the respondent herein complied substantially with the provisions of section 363 of the Los Angeles City Charter." It is my opinion that there are no equities involved in the issues here presented. The question is clearly one of interpretation and construction. Mani-

festly, it is not unjust for the people to establish reasonable and lawful requirements in a city charter, and when, as here, an individual in dealing with the city fails to comply with such requirements the consequences cannot be regarded either as unfair or unjust. If the respondent is the unfortunate victim of his own mistake it is not the function of the court to accommodate the charter by construction to respondent's error. If expediency is to govern in each case when such disputes arise, there can be no standard upon which claimants generally can rely. Such elasticity of the law only creates uncertainty, and what may be obliging to a litigant in one case may be disastrous to a litigant in another.

It is not necessary to consider what would have been the effect had it appeared that the general manager transmitted respondent's claim to the board. As is seen above, the record fails to show that this was done.

It follows from the foregoing that appellants' motion for nonsuit should have been granted and that the court erred in denying the same, and the finding of the trial court that respondent's claim was filed with the Department of Water and Power and "the chief engineer and general manager thereof", and that said department rejected the same, does not support the judgment in favor of respondent, in that it fails to show a proper presentation and rejection of respondent's claim, the prerequisite to his cause of action.

The judgment should therefore be reversed.

A petition for a rehearing was denied February 3, 1941, and appellants' petition for a hearing by the Supreme Court was denied March 7, 1941. Shenk, J., and Traynor, J., voted for a hearing.