[Civ. No. 16167. Second Dist., Div. One. June 17, 1948.]

BENJAMIN FLANERY, Plaintiff and Appellant, v. CHARLES W. MUDD et al., Respondents; WILBUR M. LAMB et al., Defendants and Appellants.

Kelsey Petterson for Appellants.

Howard Hemenway for Respondents.

BARTLETT, J. pro tem.—Benjamin Flanery, plaintiff and appellant, filed a complaint to quiet title to certain real estate in Willowbrook in Los Angeles County, against the respondents, Charles W. Mudd and Ruth Truth Mudd, husband and wife, alleging that respondents were in possession of the property and, in addition to praying that his title be quieted, asked for the ouster of the respondents. The respondents denied his title and filed a cross-complaint against the appellant Benjamin Flanery and the other defendants, his wife Goldie Flanery and Wilbur M. Lamb and Hazel M. Lamb, husband and wife, to specifically enforce a contract for the sale of the real estate in question executed by appellant Wilbur M. Lamb to respondents on March 10, 1942. The court rendered judgment in favor of respondents on this cross-complaint.

At the trial Benjamin Flanery based his claim of title on a quit-claim deed executed by appellant Wilbur M. Lamb to him on February 26, 1946. Prior to that the following had happened:

On March 10, 1942, the appellant Lamb had entered into a written contract for the sale of land to respondents for the sum of $1,500, payable $50 down and the balance at $20 or more per month, including interest at 6 per cent per annum, on the 10th of each month. The respondents were occupying the premises at this time. Thereafter payments were made by Mrs. Mudd to Mrs. Lamb in person by delivering them to Mrs. Lamb at her home until October 11, 1945. Nine of these payments were made after the date specified in the contract, although the contract provided that time was of the essence. These payments so made were accepted without any objection on the part of either Mr. or Mrs. Lamb. Shortly prior to September, 1944, Mr. Mudd had gone into the armed services and Mrs. Mudd went to Tulare to be with her husband's relatives. She missed the September payment. She came back to Los Angeles in October of that year. Mr. Lamb came to see her and told her that she had done a fine job in making her house payments out of the $100 a month allotment check she received and if she wanted anything or the children needed anything she could go ahead and miss her house payments, if she wanted to. She told him she did not want to as she did not desire to have such a burden on her husband when he returned. The October payment was made. Later in the month she saw both of the Lambs and told them she had lost her copy of the contract. Mr. Lamb told his wife to get the contract from the bank within the next couple of days and present it to Mrs. Mudd. Mrs. Lamb told her she didn't need to make the September payment until after Mrs. Mudd's husband returned from the war. Mrs. Lamb never got the contract or brought it to Mrs. Mudd. On November 8, 1945, Mrs. Mudd and her sister-in-law went to the Lamb residence to make a payment. Unknown to Mrs. Mudd, Mrs. Lamb had left the residence in October and Mr. Lamb was in the armed services, so she found the house vacant, the blinds drawn and an accumulation of mail in the mail box. She and her sister-in-law went back that night and again on November 9th, and November 10th, and found the conditions the same. They made inquiries in the neighborhood but found no trace of the Lambs. Mrs. Mudd also inquired as to their whereabouts at all of the

banks in Compton, endeavoring to find which bank had her contract, but without avail. She made like trips in December, 1945, and January, 1946, but found no one, nor did either of the Lambs ever communicate with her or ask for any of the payments. The appellant Flanery, who is the next door neighbor of the Mudds, was cognizant of this contract from the time it was entered into. He was a friend of the Lambs. In the meantime it may be mentioned for its bearing on a subsequent conversation that the Flanerys and the Mudds had quarreled over some fighting dogs owned by Flanery. On February 3, 1946, Mr. Mudd returned and found Mr. Lamb. Mr. Lamb told him that his wife was no longer there, that he had kicked her out. Mr. Mudd said he had come to see about the house and they wanted to pay off the contract because when Lamb got out of the service he might need some money. Lamb said he needed no money and further that he didn't know whether or not there was a contract. Mudd then said he would see Lamb later as there was a balance of about $800 remaining on the contract which he would like to pay off in its entirety. Lamb said that there was no hurry and told Mudd to bring in the money and he would give him a deed and the title the next time he saw him. During the conversation Lamb referred to Mudd's treatment of the Flanerys and made threats as to what he would do if Mudds continued such a course of conduct. The respondent Mudd then went to the bank to get a loan to pay Lamb. The bank approved the loan for $800 or a larger amount, if necessary. The respondents signed the note and trust deed and escrow instructions on February 9, 1946. The bank notified the appellant Lamb of this fact and asked for his demand for the amount required to pay off the contract in full. In the meantime, however, the appellants Wilbur M. Lamb and Hazel M. Lamb, it is admitted by the pleadings, declared a forfeiture of the rights of respondents under the contract of sale and executed and delivered to the appellant Flanery a quit-claim deed signed by Wilbur M. Lamb alone on February 22, 1946, and Flanery about a week later notified the Mudds that he was the legal owner of the premises. The respondents tendered him a payment for March, 1946, which tender he refused.

We have set forth the testimony in such detail for the reason that the appellant so emphatically contends that the judgment cannot be maintained either upon the ground that

the Mudds were excused for not making the payments for the few months subsequent to October, 1945, or that the Lambs had waived the clause of the contract making time of the essence. The recital of the facts which we have made is a sufficient refutation of these contentions. The evidence not only shows that for month after month the vendor accepted payments after they became due, but the only legitimate inference that can be drawn from their conduct and from their express words is that these vendors intended to waive the provisions of the contract that time should be of its essence, not only as to payments then in default but as to future installments. Their words and conduct could not do other than lull respondents into a sense of security. There was no notification ever given to respondents of an insistence upon forfeiture in the event respondents failed to make payments promptly. The law does not favor forfeitures and as stated in *Knarston* v. *Manhattan Life Insurance Co.*, 124 Cal. 74, 77 [56 P. 773], "evidence tending to show the waiver of a forfeiture will be looked upon with kindly eyes." Cases such as *Laffoon* v. *Collins*, 212 Cal. 750 [300 P. 808], and *Redd* v. *Garford Motor Truck Co.*, 205 Cal. 245 [270 P. 447], indicate that facts such as are shown by the record here are sufficient to establish such a waiver. ■ Where there is such a waiver the purchaser has a reasonable time to perform and as to what is a reasonable time for such performance presents a question of fact for the trial court to determine from all the circumstances of the particular case. (*Hoppin* v. *Munsey*, 185 Cal. 678 [198 P. 398].) ■ In view of the conversation which Lamb had with Mudd a week before the February payment became due, it cannot be said that there was any unreasonable delay on the part of the purchasers. Mudd not only offered to pay the small amount due but the entire balance of the contract notwithstanding Lamb's statement that there was no hurry. Within a few days the Mudds went to the bank and arranged for a loan to pay off not only the amount due but the whole contract. In fact, he and his wife signed the note, trust deed and escrow instructions which would have effectuated this, as early as February 9, 1946.

■ Appellant urges that the cross-complainant did not plead a waiver and did not plead "ability and willingness to make payment of the amount due." An examination of the cross-complaint discloses that so far as the waiver is concerned respondents, in unusual detail, pleaded the facts constituting

this waiver and not only pleaded their ability and willingness to pay the small amount due but their ability and willingness to pay off the entire balance of the contract and that they attempted to do so but were prevented by appellants. Furthermore, the cross-complaint alleged and the appellants in the first paragraph of their answer to the cross-complaint, expressly admitted that appellants forfeited the rights of respondents under the contract and thereafter one of them executed a quit-claim deed to the appellant Flanery. The cross-complaint stated facts which entitled respondents to relief against a forfeiture under the provision of section 3275 of the Civil Code which reads as follows: ''Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom upon making full compensation to the other party, except in case of a grossly negligent, willful or fraudulent breach of duty.'' In the case before us the respondents can be charged with no gross negligence or with fraud or with any willful breach of duty and are entitled to relief under the provisions of that section. (*McDonald* v. *Kingsbury*, 16 Cal.App. 244 [116 P. 380] ; *Bedell* v. *Barber*, 80 Cal.App.2d 806 [182 P.2d 591].)

There can be no doubt that the appellant Wilbur M. Lamb, who signed the contract as the vendor, was a proper party to the action. His wife was also a proper party to the action, for while she did not sign the contract it was presumptively community property and as such her signature would be required in the execution of any document in which any interest therein was sold or conveyed. (Civ. Code, § 172a.) She was the one to whom all the payments were made and was not only a proper party but a necessary party to the action.

There is a matter in the findings and judgment which should be corrected. It is found that the balance due on the contract is $743.80 and the judgment directs the respondents as a condition precedent to specific performance to pay that amount. At the trial, Howard Hemenway, who was the attorney for respondents, testified that he had computed the balance due and that it amounted to $839.81. Appellants evidently accepted this figure as correct for they introduced no evidence on the subject. The respondent is bound by this testimony and the findings and judgment should be corrected accordingly.

It is therefore ordered that paragraph 18 of the findings and paragraph 1 of the conclusions of law be corrected by inserting the figures $839.81 in lieu of the figures $743.80 and that the same correction be made in paragraph 1 of the judgment. As so corrected the judgment is affirmed. Respondents to recover costs on appeal.

Doran, Acting P. J., and White, J., concurred.