[Civ. No. 25905.   Second Dist., Div. Four.   Jan. 10, 1963.]

CHARLOTTE GUYER & ASSOCIATES, Plaintiff, Cross-defendant and Appellant, v. FRANKLIN FACTORS et al., Defendants, Cross-complainants and Respondents.

Moidel, Moidel, Moidel & Smith and Leonard Smith for Plaintiff, Cross-defendant and Appellant.

Harry A. Fry and Maurice Rose for Defendants, Cross-complainants and Respondents.

BURKE, P. J.—Plaintiff sued for an accounting, damages for usury arising from successive agreements to factor accounts receivable, and damages for breach of contract based on revocation of a check drawn by defendant in favor of plaintiff. The court found the first factoring agreement to be usurious but held the second free of the taint. Damages for revocation of the check were refused. Thereupon, the court struck a balance on the accounting in favor of plaintiff. Being dissatisfied with the judgment as rendered plaintiff has taken this appeal.

Plaintiff was in the business of selling ladies' garments to retail stores in the Los Angeles area. It entered into an agreement with defendants to factor plaintiff's accounts receivable at an interest rate of 5/6 per cent per month on the gross amount of accounts factored. In addition, a service charge of $1\frac{2}{3}$ per cent per invoice for "bookkeeping, credit checks, mailing, postage, financial consultations and other administrative costs" was exacted on the same basis. There was also a charge of four cents per invoice for mailing and postage which included an envelope supplied by defendant. Twenty-five per cent of each invoice was withheld as a reserve which was credited to plaintiff after collection of the account had been made. Defendant agreed to advance to plaintiff the gross amount of each invoice less reserve, interest charge, service charge, postage and time trade discounts accorded by plaintiff to its customers. In practice when a customer failed to take advantage of the time discount it was retained by defendants without any intention to pass it on to plaintiff. This agreement made April 2, 1958, was rescinded on July 15, 1958, and a second agreement was entered into on the following day.

The second agreement to the extent relevant here was substantially the same as the first agreement except that the interest charge was reduced to $\frac{1}{2}$ per cent and the service charge was increased to $2\frac{1}{2}$ per cent. The description of services to be rendered under the label "service charge" was enlarged to include "supervision of assigned accounts receivable and business advisory service."

The trial court held that payments made under the first agreement were usurious and assessed the amount of payments at $172.37. Although the service charge was not mentioned in the findings of fact, the trial judge stated in the record respecting the first agreement, "I believe as set forth there the service charge percentages were subterfuges and were not bona fide charges for substantial services in that period." The record does not disclose how the amount of usurious payments was determined but since the amount of payments set forth above is in excess of the amounts paid as interest, the balance could only be made up of service charges and therefore a finding to that effect must be implied. The trial court's memorandum of decision so indicates.

The second agreement was held to be nonusurious. Since the service charge under this agreement, if added to the interest charge, would result in usurious payments, there is an implied finding that the 2½ per cent service charge under the second agreement was for substantial services. Statements of the judge in the record substantiate this conclusion. He said: "I think that the question is one of construction of the operations. Under the second contract the interest rate was cut down, of course, and the service charge was upped; but under the second contract, even though I think the distinction is only skin deep, perhaps, there is testimony which supports the giving of some services in the line of these things which might qualify under the definition for it, and the fact that the parties entered into the agreement indicates to me when they mentioned that they had these services that they did both contemplate that sort of thing."

On appeal plaintiff objects to the finding that the second agreement was nonusurious, complains of error in the computation of damages for usury under the first agreement, alleges error in refusal to award interest upon usurious payments commencing at the time the payments were made, and seeks to establish a right to specific and punitive damages for unjustifiable stoppage of payment on certain checks. Since the claim of damages for stoppage of check payment is not closely related by facts to the usury questions, it will be considered separately below.

The record contains sustantial evidence to support a finding that the second agreement was nonusurious. The maximum amount of interest that may be exacted for a loan or forbearance of money is limited to 10 per cent (Cal. Const.,

art. XX, § 22). "Interest is the compensation allowed by law or fixed by the parties for the use, or forbearance, or detention of money." (Civ. Code, § 1915.) But the usury law does not purport to fix or limit the amount of legitimate expenses or service charges to be borne by the borrower. (See *Beneficial Loan Society, Ltd.* v. *Haight*, 215 Cal. 506, 517 [11 P.2d 857].) ██ As said in *Klett* v. *Security Acceptance Co.*, 38 Cal.2d 770, 787 [242 P.2d 873] :

"A lender is not prohibited from charging an extra and reasonable amount for incidental services, expenses or risk additional to the lawful interest, other than for the loan of money. He may make a reasonable charge for investigating, arranging, negotiating, brokering, making, servicing, collecting and enforcing his obligation.

"Such items, however, must be confined to specific service or expense incidental to the loan incurred in such a way as to preclude it being a device through which additional interest or profit on the loan may be exacted."

██ It is a question of fact as to whether a particular transaction is or is not usurious. "Where the form of the transaction makes it appear to be nonusurious, it is for the trier of the fact to determine whether the intent of the contracting parties was that disclosed by the form adopted, or whether such form was a mere sham and subterfuge to cover up a usurious transaction." (*Janisse* v. *Winston Investment Co.*, 154 Cal.App.2d 580, 582 [317 P.2d 48, 67 A.L.R.2d 225].)

██ In the present case there is abundant testimony upon which the trial judge could rely to find the rendition of substantial services beyond a loan or forbearance of money. The testimony indicates that services rendered under the business advisory service category would vary in each instance; that while the services basically contemplated under the first agreement were the same as those under the second agreement, different problems would arise.

The first agreement was in effect for approximately three and one half months during which time little was done in the way of additional services. The additional charges were accordingly found to be subterfuges. But the second agreement expanded the services to be rendered. Uncontradicted evidence shows that defendants acted in many aspects of plaintiff's business, including obtaining suppliers which would not have dealt with plaintiff except for the intervention of

defendants. There were many business conferences at the places of business of both parties.

A. M. Lurie, a general partner of defendant, was examined by plaintiff under section 2055, Code of Civil Procedure. As to the nature of services rendered for which the service charge was made, he testified these services were rendered under the "Business Management" clause of the contract, classifying most of the services under "general business counseling." Lurie also testified that on numerous occasions plaintiff received consultation and advice from defendants and that other services were rendered, which included bookkeeping, rendering of monthly statements, following up past due accounts and conferences with plaintiff respecting the latter. He stated that their method of handling past due accounts was more extensive than that usually supplied by a factor. He testified that defendant also counselled plaintiff with respect to entering a new line of business, problems connected with production and manufacture of ladies' garments, pricing, merchantability of various items, securing manufacturing services and finding sources of supply for raw materials. In short, it appears defendants did render substantial service and advice in all aspects of plaintiff's business. We conclude the implied finding that service charges under the second agreement were not subterfuges is supported by substantial evidence.

Plaintiff also argues that the second agreement was in fact usurious without considering the service charges because time discounts lost by customers were retained by defendants with the intention of keeping them. According to plaintiff's calculations this would follow if the discounts are characterized as payments for a loan or forbearance of money. But under the factoring agreements, plaintiff was entitled to receive trade discounts unused by customers. Defendant's retention of these sums was wrongful, but cannot properly be characterized as interest payments. They would, of course, be recoverable and in fact were credited to plaintiff in the accounting.

Plaintiff's contention that usurious payments under the first agreement were inaccurately computed is not controverted by defendant and a different computation is supported by competent evidence. ■ Since the trial judge indicated that service charges paid under the first agreement were subterfuges designed to evade the usury laws, damages should

have been assessed on the basis of the full amount paid under this guise. The accounting summary prepared by defendants shows that $50.03 in interest and service charges was paid more than one year prior to filing the complaint, but that $245.81 is within a one-year period. Therefore, rather than $172.37 as found by the court below, plaintiff is entitled to a return of interest paid prior to the one-year period (*Heald* v. *Friis-Hansen,* 52 Cal.2d 834, 837 [345 P.2d 457]) and treble the amount of usurious interest paid within one year (West's Civ. Code, § 1916-3 [Stats. 1919, p.lxxxiii, § 3; Deering's Gen. Laws, 1954, Act 3757, § 3]; *Terry Trading Corp.* v. *Barsky,* 210 Cal. 428, 434 [292 P. 474].) The amount should be $787.46 rather than $517.11 awarded by the trial court. Since no issue of fact is raised by this determination, defendants have not controverted plaintiff's argument on the point and the correct figures are ascertainable from the record, the judgment is modified to reflect the additional recovery to which plaintiff is entitled, including interest thereon as awarded by the trial court from and after April 30, 1959. (Code Civ. Proc., § 53; see *Flanery* v. *Mudd,* 86 Cal.App.2d 250, 255 [194 P.2d 806]; *Kniese* v. *Fairfax Incline R. R. Co.,* 98 Cal.App. 610, 613 [277 P. 347].)

Plaintiff also sought specific and punitive damages on the ground defendants "unlawfully, maliciously, without right and without notice" stopped payment on certain checks drawn by them in favor of plaintiff after plaintiff had deposited them in its account and had written other checks drawing on the checks so deposited. It was alleged these checks were given as proper payments pursuant to the factoring agreement on accounts factored by defendants. The trial court, however, found "That defendant . . . did stop payment on two checks issued to plaintiff at plaintiff's request, by way of loan, and that the failure to receive such money as a loan prevented plaintiff from meeting indebtedness to some creditors, but that damage to the plaintiff, if any, was caused by the indebtedness and not the failure to make the loan."

Prior to adoption of the negotiable instruments law, the drawer of a check impliedly promised it would be paid upon presentment to the drawee (*Bank of Venice* v. *Clapp,* 17 Cal.App. 657, 659 [121 P. 298]). This rule has been carried over into the code. "The drawer by drawing the

instrument . . . engages that on due presentment the instrument will be accepted or paid. . . .'' (Civ. Code, § 3142.) Therefore, if the drawer countermands payment without good cause the engagement that payment will be made upon due presentment is breached. However, the effect of this provision is to continue the drawer's liability on the instrument, not to support an action for damages based on the underlying obligation which the instrument may represent.

Thus, it has been held that, although the drawee is relieved of any obligation upon an instrument revoked by the drawer, the drawer remains liable thereon in the absence of a good defense. (See *Bank of Venice* v. *Clapp, supra; Hiroshima* v. *Bank of Italy,* 78 Cal.App. 362 [248 P. 947].) Translating the statutory language into the effect of the promise that payment will be made, the result is that the drawer promises to pay the instrument upon drawee's failure to do so. The promise is an intrinsic element of the instrument. In such a case the action is on the instrument, not on the underlying obligation represented thereby.

The damages alleged by plaintiff here resulted in impairment of credit because certain checks drawn by plaintiff, which were post-dated, were not paid because of insufficient funds when presented by the payee-creditor. These are not the same instruments as, and bear no relationship to, the checks at issue here. The damages alleged, if any, as found by the trial judge, arise from breach of a promise to make a loan, the underlying obligation, and have no bearing upon defendants' liability on the instruments in question, except as validity of the underlying obligation may arise by way of defense. The trial court correctly concluded that revocation of the checks did not result in the damages alleged. Whether or not defendants breached an agreement to make a loan to plaintiff with resulting damages are questions not here before us and we express no opinion thereon.

The judgment, as modified, is affirmed. Each party to bear its own costs on appeal.

Jefferson, J., and Ford, J.,* concurred.

---

*Assigned by Chairman of Judicial Council.